76105. GULF WINDS, LTD. et al. v. FIRST UNION BANK.
(370 SE2d 508)

BEASLEY, Judge.

This appeal is from a judgment for the lessor following a bench trial in a dispute involving an alleged default under an equipment lease for two pay telephones.

Lease Planning, Inc., is in the business of leasing various types of equipment and motor vehicles. It solicits business from vendors, companies that either manufacture or distribute equipment. If a vendor's salesman has a customer who would rather lease than pay cash for the equipment, he would use Lease Planning to purchase it. Sometimes Lease Planning is solicited from vendors asking if it would handle a transaction. In either event, the salesman submits the customer's credit application to Lease Planning, which reviews it and submits it to its lending bank. If the bank approves, Lease Planning draws up the lease documents and provides them to the vendor for execution. When the documents are executed, Lease Planning then assigns the lease to the lending bank and the bank advances the money to pay the vendor for the equipment.

In this case, salesman Henke of Future Call of America, Inc., contacted Lease Planning to handle lease financing on some of the company's telephone systems. Subsequently, Future Call solicited Gulf Winds, Ltd., to purchase two telephone booths and equipment. Henke submitted to Lease Planning a credit application for Gulf Winds' lease of the equipment. Lease Planning and its lending bank, First Union Bank, (then Commercial Bank & Trust Company), re-

viewed and approved the application. Lease Planning prepared the lease documents which were executed by Chandler, vice-president of Gulf Winds. The documents consisted of the equipment lease, a supplementary schedule, a delivery and acceptance receipt, and an option to purchase. A personal guaranty by one James was also executed to insure Gulf Winds' obligations under the lease.

Lease Planning assigned the equipment lease to the bank, obtained the loan in the principal amount of $4,939.02, and paid this amount to Future Call. After the equipment was delivered and installed, Gulf Winds was dissatisfied with it. At the time of execution of the documents, Gulf Winds made two lease payments for the first and last months; it later made additional payments prior to its cessation of payments under the lease.

Lease Planning (First Union as its assignee was later substituted as the plaintiff) sued Gulf Winds and guarantor James to collect $6,235.52 allegedly due under the lease, plus interest and attorney fees. Defendants responded that they had no obligation under the lease because it was procured by the fraud of Henke as Lease Planning's agent and because there was a failure of consideration in that no operable telephones were ever delivered.

The trial court found that Henke was not Lease Planning's agent, that if anything Henke was Gulf Winds' agent in procuring the financing, that there was no fraud, that there was no testimony to establish any difference in the equipment between what was represented by Henke and what Gulf Winds received, and that the lease documents made clear that Gulf Winds had to look to the manufacturer of the equipment in the event there was any problem with it. The court awarded judgment in favor of plaintiff First Union for the sum sought plus fifteen percent as attorney fees, post-judgment interest at the legal rate, and costs.

1. Gulf Winds and James contend that under *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883 (354 SE2d 210) (1987), the trial court erred in determining that Henke was not Lease Planning's agent.

It is true as appellants contend that *Potomac Leasing* involves a similar situation. Potomac did not directly employ any leasing agents. Instead, salesmen, who were employed by manufacturers or product distributors were provided with blank copies of the leasing company's documents and were instructed with regard to how those documents were to be filled out. When a salesman visited a potential customer, in addition to being authorized by his employer to negotiate a direct purchase, he was also authorized by the leasing company to negotiate a lease of the product. The salesman would fill in the leasing documents with the relevant information, secure the customer's signature, and send the completed document to the leasing company. If the leas-

ing company accepted the lease as negotiated by the salesman, the company would purchase the product from the salesman's vendor. The company then received the stipulated monthly rental from the customer. The salesman negotiated a lease of equipment which was sent to and accepted by Potomac. The lease agreement contained a provision expressly stating that the salesman did not occupy the status of the leasing company's agent and that the salesman's representations would in no way affect the parties' rights or obligations under the lease. The lessee ceased to make rental payments alleging that the leased equipment had failed to perform as it had been represented by the vendor's salesman. Potomac sued the lessee to recover the balance due under the lease and the lessee defended in part on the basis of fraud in the inducement of the lease.

The case was tried before a jury and after Potomac's motion for a directed verdict was denied, the jury returned a verdict in favor of the lessee. On appeal, Potomac's sole enumeration was the denial of a directed verdict.

This court held that the trial court did not err in denying Potomac's motion for directed verdict on the ground that there was no evidence of agency, because the denial of Potomac's witness of an agency relationship and the language in the lease document that the salesman did not occupy the status of Potomac's agent were not necessarily conclusive as to the non-existence of an agency relationship. The court did not hold that the facts in *Potomac required* the legal conclusion that the salesman *was* Potomac's agent, but merely that there was some evidence of it so as to make inappropriate a directed verdict on the issue of non-existence of an agency relationship.

This case is presented in a very different procedural posture. The lower court was sitting as the factfinder and it found from the evidence that Henke was not Lease Planning's agent. "In a bench trial the court sits as the trier of fact and his findings 'shall not be set aside unless clearly erroneous . . .' [Cit.] The 'clearly erroneous' test is the same as the 'any evidence rule.' [Cit.] Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them. [Cit.]" *Allen v. Cobb Heating &c. Co.*, 158 Ga. App. 209, 210 (279 SE2d 505) (1981); OCGA § 9-11-52. Accord *Davis v. Hosp. Auth. of Fulton County*, 167 Ga. App. 304, 305 (306 SE2d 306) (1983); *Wolfe v. Rhodes*, 166 Ga. App. 845, 847 (305 SE2d 606) (1983).

"An agent . . . is some person authorized to act for another arising when, expressly or impliedly, there has been a delegation with more or less discretionary power to act, to manage an affair, and to render an account." *Headrick v. Fordham*, 154 Ga. App. 415, 417 (1) (268 SE2d 753) (1980). The existence of agency and the extent of the agent's authority are questions of fact for the trier of fact. *Wiggins v. Home Owners &c. of Metro. Atlanta*, 168 Ga. App. 777 (310 SE2d

554) (1983); *Renfroe v. Warren-Hawkins &c. Post No. 523*, 157 Ga. App. 614 (278 SE2d 414) (1981).

In this case, unlike in *Potomac*, the salesman was not authorized to negotiate with the purchaser/lessee on behalf of Lease Planning. Nor did the salesman Henke prepare the lease documents. These factors evidenced a lack of discretionary power on the part of Henke to act for Lease Planning. As there is evidence to sustain the court's finding of no agency in regard to Henke, we cannot disturb it.

2. Appellants urge that the court erred in implicitly determining no fraud by Henke.

Inasmuch as we have determined that the trial court's finding that Henke was not Lease Planning's agent is supportable, whether or not Henke fraudulently induced defendants to enter into the arrangement is no longer relevant to Lease Planning's liability for the alleged fraud.

3. Appellants enumerate as error that the trial court implicitly and erroneously found no failure of consideration, but they have not presented any direct argument or authority on this contention and therefore it is treated as abandoned. Court of Appeals Rule 15 (c) (2). However, we note that there is evidence to sustain the finding that the lease was supported by consideration. Gulf Winds received the telephone equipment, and although defendants asserted that it was "nonstandard," it was operational at least part of the time. Moreover, the question of fitness of the equipment is not determinative on any issue of want of consideration between the lessor and lessee, for in return for Gulf Winds' promise to make lease payments, Lease Planning obtained a loan and purchased the equipment. "It is not necessary that the promisor receive anything, as loss, trouble or disadvantage undergone by the promisee is a sufficient consideration. [Cits.]" *Collins v. Gwinnett Bank &c. Co.*, 149 Ga. App. 658 (255 SE2d 122) (1979).

4. Appellants claim that the court erred in ruling that Chandler's testimony regarding conversation with Henke was inadmissible hearsay. Beyond this bare assertion, there is no supporting authority or argument, and the claim is considered abandoned. Court of Appeals Rule 15 (c) (2); *Melton v. Gilleland & Sons*, 176 Ga. App. 390 (1) (336 SE2d 315) (1985).

5. In argument throughout their brief appellants complain that the trial court should have ruled as a matter of law that they revoked acceptance under the Uniform Commercial Code, OCGA § 11-2-608, but they did not enumerate this as error.

"'An enumeration of error cannot be enlarged to include other issues not made therein.' [Cit.]" *Hurston v. Ga. Farm &c. Ins. Co.*, 148 Ga. App. 324, 326 (2) (250 SE2d 886) (1978).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED JUNE 2, 1988.

*Scott Walters, Jr.*, for appellants.
*Scott F. Norberg*, for appellee.