## A91A1608. DECATUR COMPANY v. BOWEN.
### (416 SE2d 304)

COOPER, Judge.

This appeal arises out of a dispute between appellant and appellee over whether appellee is entitled to a percentage of the proceeds of a condemnation award. A bench trial resulted in a judgment in favor of appellee.

Between 1984 and 1990, appellee and Frank Tetterton ("Tetterton") each owned 50 percent of Atlanta Commons, Ltd. ("Atlanta Commons"), a corporation which owned several parcels of land in Gwinnett County. In 1987 or 1988, the Gwinnett County School Board (hereinafter "Board") implemented a project to acquire land suitable for the construction of two new schools. Appellee, the president of Atlanta Commons, was approached by the Board which was interested in a parcel of property owned by Atlanta Commons. Appellee showed the Board the property, provided the Board with engineering drawings and engaged in numerous discussions with the Board about the property. Although the Board looked at other sites, the Atlanta Commons property was considered to be the best site for the proposed schools. In the latter part of 1989, appellee met with Alton Crews ("Crews"), the Board's superintendent of schools, and

reached an agreement regarding the purchase of approximately 27 acres of property belonging to Atlanta Commons. In a letter dated November 1, 1989 from Crews to appellee, Crews wrote: "The [Board] meeting in regular session . . . agreed to purchase approximately 28 acres, located on Taylor Road and owned by Atlanta Commons, Inc. for $26,000 per acre. This sale is contingent upon voter approval of a school bond sale, which will be placed on the ballot early in February 1990. Payment will be made after the bond sale has been legally validated." (Indention omitted.)

Several events happened in early 1990 which precipitated the dispute between the parties. In a letter dated January 17, 1990, from Robert Gann ("Gann"), the assistant superintendent of schools, to Atlanta Commons, the Board again expressed an interest in purchasing 27.4 acres of land owned by Atlanta Commons and offered $26,000 per acre. That letter requested a reply from Atlanta Commons by January 29, 1990. Also, in early 1990, appellee and Tetterton began negotiating with each other to dissolve their business relationship. In February 1990, the school bond referendum failed, and the Board began exploring other possibilities to finance the construction of the schools. On March 2, 1990, as part of the dissolution of appellee and Tetterton's business relationship, appellee, as president of Atlanta Commons, executed a warranty deed transferring land owned by Atlanta Commons (including the parcel in which the Board expressed interest) to appellant, a Georgia general partnership. On March 5, 1990, appellee and Tetterton signed a letter agreement which provided that as material consideration for the transfer of the property described in the warranty deed, Tetterton and appellant "shall pay to [appellee] ten percent of the gross selling price at closing of any contract between the [Board] as evidenced by an Agreement attached hereto as Exhibit 'A' and the letter of intent from [Crews] dated November 1, 1989, on approximately 28 acres, which amount shall be payable if, as, and when the closing of the sale occurs." Exhibit "A" constituted an agreement (hereinafter "Commission Agreement") between appellee, Tetterton and appellant which provided that appellee would be paid a commission of ten percent of the gross selling price "at the time any transaction is closed between the [Board] and Tetterton and [appellant]." Paragraph 2 of the Commission Agreement provided: "In the event that no contract is entered into on or before June 30, 1990, between the [Board] and Tetterton and [appellant] . . . this agreement shall be void, and [appellee] shall not be entitled to any payment thereafter on account of any sale . . . . If no such contract has been entered into by June 30, 1990, this agreement may be terminated of record by a sworn affidavit of J. Anthony McCullar, stating the necessary facts to demonstrate no such contract has been entered into. . . ." Sometime prior to the end of March 1990, Gann

went to see Tetterton and stated that the Board was going to offer $26,000 per acre for the land. Tetterton inquired of Gann about the possibility of the Board putting a road through the property as part of the sale, and Gann replied that he did not think that was a problem, but he would have to take the proposal back to the Board. Tetterton did not hear any more from Gann until he received a letter dated March 28, 1990 from Gann, stating that the bond referendum had failed and the Board was declining Tetterton's counteroffer and withdrawing its initial offer to purchase the property. The Board expressed no further interest in the property until November 1990, at which time the Board was only interested in building one new school which required approximately 16 acres of land. Tetterton then began negotiating with the Board for the sale of a smaller parcel of property. However, a sale of the property was never consummated, and on January 30, 1991, a condemnation action was filed by the Gwinnett County School District to acquire approximately 16 acres of land from appellant. On February 15, 1991, J. Anthony McCullar, the managing partner of appellant, filed an affidavit pursuant to paragraph 2 of the Commission Agreement setting forth that no contract between the Board and either Tetterton or appellant was entered into as specified in paragraph 1 of the Commission Agreement. On February 19, 1991, the special master entered an award of $524,700, of which $448,000 represented the actual market value of the condemned property and $76,700 represented the consequential damages to the remaining property. The award was subsequently increased by $6,000 for an easement received by the Board, and following a consent order between the parties the total amount paid into court was $581,542.80. Appellee filed a response to the condemnation petition, claiming a portion of the proceeds which he asserted were due to him under the terms of the Commission Agreement. Appellant maintained that appellee was not entitled to any monies under the Commission Agreement because no contract for the sale of the land had been entered into with the Board prior to June 30, 1990. Following a hearing, the trial court entered an order awarding appellee $58,154.28, an amount representing ten percent of the condemnation award.

The trial court found two bases upon which appellee could recover. First, the trial court found that in March 1990, the Board offered to conclude the purchase pursuant to the November 1, 1989 letter and that instead of accepting the offer, Tetterton made a counteroffer which "forced [the Board] to wait until the filing of this civil action to condemn the property." The trial court then concluded that since appellant and Tetterton had the opportunity to conclude the sale prior to June 30, 1990, they were estopped from asserting that no contract was in existence prior to June 30, 1990. Second, the trial court found that the November 1, 1989 "letter agreement" was

not terminated since appellant did not file the termination affidavit referred to in paragraph 2 of the Commission Agreement until February 15, 1991.

1. Appellant first contends that the trial court erred in finding that it was estopped from asserting that no contract existed prior to June 30, 1990. " 'In a bench trial the court sits as the trier of fact and his findings "shall not be set aside unless clearly erroneous. . . ." (Cit.) The "clearly erroneous" test is the same as the "any evidence rule." (Cit.) Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them. (Cit.)' [Cits.]" *Gulf Winds, Ltd. v. First Union Bank*, 187 Ga. App. 383, 385 (1) (370 SE2d 508) (1988). The record does not support the trial court's finding that in March 1990 appellant refused to conclude the Board's offer and forced the Board to file a civil action to condemn the property. Tetterton testified that when he discussed the Board's offer with Gann, he inquired about the possibility of the Board putting a road through the property. Tetterton emphasized to Gann that he did not want to lose the deal, and Gann informed Tetterton that he did not see any problem but he would have to discuss it with the Board. The Board subsequently responded that it was withdrawing its offer and that it did not accept the counteroffer. The record does not indicate that the Board's decision to withdraw its offer was due to Tetterton's inquiry about the road. Nor does the record support the finding that Tetterton refused the Board's offer. Rather, the record reflects that Tetterton negotiated with Gann in good faith to bring about a sale of the property which unfortunately did not lead to a contract. " 'In order for an estoppel to arise, there must generally be some intended deception, or gross negligence amounting to constructive fraud by which another is misled to his injury. (Cit.)' [Cit.]" *Armstrong v. Cal. Fed. S & L Assn.*, 192 Ga. App. 508, 510 (3) (385 SE2d 113) (1989). Furthermore, " '[t]he doctrine of estoppel does not obtain unless there be injury to one party or advantage to the other, resulting from the acts or declarations of the person to be estopped.' [Cit.]" Id. There is no evidence of any intended deception or fraud on the part of Tetterton or that any of Tetterton's actions were an attempt to thwart a contract on the property from being executed until after June 30, 1990. Accordingly, the first basis of the trial court's ruling must fail.

2. Similarly, we find no factual basis for the trial court's conclusion that appellee was entitled to recover under the Commission Agreement because of appellant's delay in filing the termination affidavit. The Commission Agreement clearly provided that "in the event that no contract is entered into on or before June 30, 1990 . . . *this agreement shall be void*." (Emphasis supplied.) Such language is clear, unambiguous and capable of only one interpretation, and no

construction by the court was either required or permissible. *Hopkins v. Hopkins*, 186 Ga. App. 530, 531 (367 SE2d 825) (1988). Even if the trial court found an ambiguity or conflict was created by the provision allowing the agreement to be *"terminated of record"* by the filing of an affidavit, the evidence adduced at the hearing reflects that the purpose of that provision was merely to provide a mechanism for terminating the agreement on the record without having to obtain appellee's signature. Furthermore, since the clause voiding the contract appeared in the contract before the clause relating to the affidavit, it would prevail in the event of a conflict. See *Holtzclaw v. City of Dalton*, 189 Ga. App. 650, 652 (377 SE2d 196) (1988).

3. Appellant also contends that the trial court erred in entering a judgment in favor of appellee for ten percent of the amount paid into court rather than ten percent of the amount awarded by the special master for the condemned property. In light of our reversal, we find it unnecessary to address this enumeration of error.

*Judgment reversed. Birdsong, P. J., and Pope, J., concur.*

DECIDED JANUARY 27, 1992 —
RECONSIDERATION DENIED FEBRUARY 26, 1992 —

*Peterson, Dillard, Young, Self & Asselin, Joel L. Larkin*, for appellant.

*Webb, Tanner & Powell, Anthony O. L. Powell, R. Jackson Wilson*, for appellee.