A94A0231. PROPERTY SYSTEMS LAND CORPORATION
v. TULLIS.
(444 SE2d 366)

BEASLEY, Presiding Judge.

Appellant Property Systems Land Corporation (Property Systems) brought this action against Jerry Tullis to recover a real estate commission allegedly due it on the sale of Tullis' land. After a bench trial, the trial court found for Tullis.

The evidence at trial showed that Tullis sought to sell a 12.86 acre tract of land he owned. On April 13, 1992, Tullis entered into a "Land Marketing Authorization" with Property Systems giving it the exclusive right to market his land. The agreement provided in pertinent part: "If I sell or dispose of the property or agree to do so during the term (whether through my own efforts or those of any other party) or if during the term [Property Systems] delivers to me the written offer of a party ready, willing, and able to acquire the property on the above terms or others acceptable to me, then I shall pay [Property Systems] a commission in the amount of 10% of the total price, payable on the scheduled closing date. After the term I will not be obligated to pay the commission to [Property Systems] unless I agree to dispose of the property within 90 days to a prospect [Property Systems] disclosed to me during the term." The 90-day listing agreement contained an automatic 90-day renewal provision that was not cancelled by either party. The second 90-day period expired on October 10.

During the initial 90-day term, Property Systems presented Tullis with a purchaser who contracted to buy the land but ultimately cancelled. On August 22, during the renewal term, Tullis entered into a written contract to sell the land to Tom Catanese, an individual

who was presented to Tullis by another broker. When Property Systems learned of the contract with Catanese, it notified Tullis that it was entitled to a commission on the sale pursuant to its exclusive listing agreement. Tullis then informed Catanese of Property Systems' claim for a commission. He also refused to accept Catanese's tender of the $2,500 earnest money check called for by the August 22 contract. Catanese understood that Tullis' refusal to accept his check was based on Property Systems' claim for a commission.

Tullis testified at trial that the Property Systems' agent he dealt with assured him that the listing agreement was for 90 days only and he thus did not believe he owed a commission on the Catanese contract since it occurred outside the 90-day period. He acknowledged that the listing agreement did contain a 90-day renewal provision and that he did not read the agreement before signing it.

Tullis further testified that the written contract with Catanese was voided and that he and Catanese simply had a verbal or "gentlemen's agreement" to work something out with the property. Catanese testified that he did not believe he had a binding contract to purchase the property and that he knew he was at risk in performing feasibility studies on the property and seeking to rezone it. Nevertheless, he believed he and Tullis would go through with the deal in one form or another. Catanese made all the arrangements necessary to facilitate the purchase, he obtained the rezoning in his own name as "Purchaser," and he had feasibility studies conducted. He admitted on cross-examination that he was able to close on the property under the August 22 contract.

Catanese testified that he could not close, in his words, "by myself" but had to obtain additional funding from his sisters, which he did the day before the closing. He testified that it was in his best interest to purchase the property rather than develop it in partnership with Tullis, which was suggested by Tullis, because it enabled him to be in complete control of the property. He stated "Well, thank God, I did come up with the money and I was able to close, which was in my best interest to . . . to be in complete control." He admitted that he closed under a corporate name, Banker's Choice, Inc.

The closing took place on November 6 with Tullis selling the property to Banker's Choice, Inc., and Catanese signing the closing documents on its behalf as its President. Although the closing took place one day later than called for in the August 22 contract, the remainder of the sale was in accordance with its precise terms.

At trial, Tullis essentially defended on the ground he was fraudulently induced to enter into what turned out to be a 180-day exclusive listing agreement. The trial court found that the listing agreement was valid and had renewed for an additional 90 days; that Tullis and Catanese entered into a contract to sell the property during the term

of the listing agreement but never closed; that after the listing agreement expired, Tullis sold the property to a separate entity, Banker's Choice, Inc.; and that Catanese executed the closing documents only in his representative capacity as agent for the corporation. The court further noted that Property Systems did not contend the contract between Tullis and Banker's Choice was made during the term of the listing agreement or that it was owed any commission on the sale of the property to Banker's Choice. Judgment was entered for Tullis.

Property Systems contends that the evidence conclusively showed that Tullis agreed to sell the property to Catanese during its exclusive listing agreement and that Tullis did in fact sell the property as agreed.

"The finding[s] of fact by the trial court in non-jury cases will not be set aside on appeal unless they are wholly unsupported by the evidence or are clearly erroneous. [Cit.]" *Davis v. Hosp. Auth. of Fulton County*, 167 Ga. App. 304, 305 (306 SE2d 306) (1983).

The trial court erroneously found that the property was ultimately sold to someone other than Catanese such that no commission was owed. The fact that Catanese signed the closing documents only in his representative capacity as President of Banker's Choice, Inc., does not void the commission. While there was no specific evidence presented that Catanese was the sole owner of Banker's Choice, Inc., there was undisputed evidence that Catanese exercised control over its title purchase of Tullis' property.

The entire line of questioning to Catanese at trial was phrased in terms of Catanese being the purchaser of the property from Tullis, and no one, including Tullis, ever contended at trial that Catanese was not in fact the purchaser of the property. Banker's Choice never entered into the picture as the grantee of title until Catanese so designated it for the closing.

Finally, Banker's Choice was referred to during the trial as Catanese's company and no one attempted to correct this reference. The property was sold under the precise terms of the August 22 contract other than that the earnest money deposit was waived and the closing took place one day late. There is no contention or evidence that the sale to Banker's Choice occurred under any other contract than that entered into between Tullis and Catanese on August 22 or their gentlemen's agreement, both being within the listing period.

Because the evidence showed that Tullis agreed to sell the property to Catanese during the term of the exclusive listing agreement and that Catanese controlled the actual purchase of the property and designated the grantee, the trial court's judgment for Tullis was based on an erroneous finding of fact and is reversed. See *Decatur Co. v. Bowen*, 203 Ga. App. 84, 87 (1, 2) (416 SE2d 304) (1992).

*Judgment reversed. Andrews and Johnson, JJ., concur.*

DECIDED MAY 10, 1994 —
RECONSIDERATION DENIED MAY 27, 1994 —

*Cofer, Beauchamp & Butler, Bryant K. Smith*, for appellant.
*Chandler & Britt, Richard B. Chandler, Jr., Gregory D. Jay*, for appellee.
*Anne E. Meroney*, amicus curiae.