S96G1641. COLONIAL PACIFIC LEASING CORPORATION
v. McNATT et al.
S96G1642. DATRONIC RENTAL CORPORATION et al. v. McNATT
et al.
(486 SE2d 804)

BENHAM, Chief Justice.

We granted a writ of certiorari to the Court of Appeals to review its decision in *McNatt v. Colonial Pacific Leasing Corp.*, 221 Ga. App. 768 (472 SE2d 435) (1996). We expressed particular concern with whether the "hell or high water" clause in the equipment finance leases at issue insulated the assignees of the lessor from the lessee's claim of fraud allegedly perpetrated by agents of the supplier of the equipment. We conclude that a "hell or high water" clause does not insulate a lessor's assignee from a claim of fraud where an agency relationship can be established between the assignee and the perpetrators of the alleged fraud.

In early 1991, Linda and William McNatt, sole shareholders and president and secretary-treasurer, respectively, of Quick-Trip Printers, Inc., entered into negotiations with representatives of Itex Systems Southeast, Inc., for the acquisition of an Itex computer printing system. The McNatts selected the equipment Quick-Trip Printers desired to obtain from Itex and, on June 10, 1991, executed equipment finance leases with Burnham Leasing Company, whereby Burnham agreed to purchase the equipment chosen by Quick-Trip

Printers from the supplier with which Quick-Trip had dealt, and to then lease the equipment to Quick-Trip for a monthly rental payment. Burnham Leasing immediately assigned its interest in the leases to appellants Colonial Pacific Leasing Corporation and Datronic Rental Corporation.[1] Though she did not later recall signing it, Linda McNatt's signature appears on an "Acknowledgment and Acceptance of Equipment by Lessee,"[2] dated June 11, 1991. Linda McNatt also purportedly executed a personal guaranty of the lease agreement on June 10, 1991.[3]

Quick-Trip Printers experienced problems with the equipment, and the assignee/lessors delayed payment to Itex. While Itex was ultimately paid for the equipment, Quick-Trip Printers never made a lease payment to the assignee/lessors because the equipment never performed as the Itex agents led the McNatts to believe it would. The lessors repossessed the equipment and, four months after it signed the leasing documents, Quick-Trip Printers filed suit against the equipment supplier, the manufacturer, and the lessors, seeking, among other things, rescission of the leases. In an amended pleading, Quick-Trip Printers sought damages for the assignee/lessors' alleged negligent release of funds to Itex. Colonial Pacific and Datronic each filed a counterclaim seeking payment pursuant to the leases assigned to them. The trial court granted summary judgment in favor of the assignee/lessors on the main claims, relying on Quick-Trip Printers' disclaimer of all warranties concerning the suitability of the equipment,[4] and a finding that lessee Quick-Trip Printers had

---

[1] The leases executed by Quick-Trip Printers and Burnham Leasing authorized Burnham to assign its interest in the lease, and stated that any assignee of Burnham would have all of the rights but none of the obligations of Burnham under the lease. Quick-Trip Printers, as lessee, agreed that it would not assert against the assignee/lessor any defense, counterclaim, or set-off that it might have against Burnham.

[2] In that document, Quick-Trip acknowledged that the specified equipment had been received "in good condition and repair, has been properly installed, tested, and inspected, and is operating satisfactorily in all respects for all of Lessee's intended uses and purposes." The document went on to state that "Lessee hereby accepts unconditionally and irrevocably the Equipment" and "specifically authorizes and requests Lessor to make payment to the supplier of the Equipment." Just above the signature line, in upper-case letters, was the lessee's acknowledgment and agreement "THAT LESSEE'S OBLIGATIONS TO LESSOR BECOME ABSOLUTE AND IRREVOCABLE AND LESSEE SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT."

[3] While acknowledging that the signature on the personal guaranty looked like her signature, Mrs. McNatt questioned whether she had signed the document, noting that she was not acquainted with the person who purportedly witnessed her signature. The witness, an employee of Burnham Leasing, executed an affidavit in which she stated she had witnessed Mrs. McNatt sign the personal guaranty.

[4] Prominently displayed on the front page of both leases signed by Quick-Trip was Burnham Leasing's disclaimer of warranties and claims:
THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR. Lessee acknowledges and agrees by his signature below as follows: (a) LESSOR MAKES

authorized the release of the funds. The trial court also granted the assignee/lessors summary judgment on their counterclaims, "pursuant to the terms of their respective equipment leases."[5]

The Court of Appeals reversed the trial court's judgment on the main claims, finding issues of material fact on Quick-Trip's assertion of failure of consideration and on Quick-Trip's claim that the assignee/lessors negligently released funds to the equipment supplier. The appellate court reversed the grant of summary judgment to the assignee/lessors on their counterclaim for the unpaid rent, holding that the leases' requirement that the rental payments be made even if the equipment were damaged, defective, or unfit could not be enforced when it was alleged that employees of the equipment vendor, Itex, had fraudulently induced Quick-Trip to acquire the equipment. That is to say, the "hell or high water" clauses in the leases requiring payment to the assignee/lessors were of no moment where the lessee alleged the lease was procured by the fraudulent misrepresentations of the vendor's agents.

1. The leases in question are classic examples of "lease financing," described by one commentator as possibly " 'the most important single source of funds to support business expenditures for capital equipment.' [Cit.]" Amelia H. Boss, The History of Article 2A: A Lesson for Practitioner and Scholar Alike, 39 Ala. L. Rev. 575, 577 (1988). The tax laws, rulings of the Comptroller of the Currency, as well as amendments to the Bank Holding Company Act and government regulations have fueled the trend toward equipment leasing. Edwin E. Huddleson III, Old Wine in New Bottles: UCC Article 2A — Leases, 39 Ala. L. Rev. 615, 616, n. 1 (1988). As of 1992, it was estimated that 30 percent of capital equipment in the United States was

---

NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT; . . . (e) If the Equipment is not properly installed, does not operate as represented or warranted by the supplier or manufacturer, or is unsatisfactory for any reason, regardless of cause or consequence, Lessee's only remedy, if any, shall be against the supplier or manufacturer of the Equipment and not against Lessor.

[5] In each lease, Quick-Trip Printers "acknowledge[d] and agree[d]" that "NO DEFECT, DAMAGE OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS LEASE." It further agreed to pay the total rent, that it would not "abate, set off, deduct any amount, or reduce any payment for any reason," that the lease was not cancelable or terminable by Quick-Trip, and that it would not "assert against the [lessor's] assignee any defense, counterclaim, or setoff that [Quick-Trip] may have against [Burnham Leasing]." The requirement that the lessee continue to make payments regardless of the condition of the equipment and that the lessee not assert against the assignee/lessors defenses assertable against the original lessor is commonly referred to as a "hell or high water" clause.

acquired through leasing. Robert D. Strauss, Equipment Leases under U.C.C. Article 2A — Analysis and Practice Suggestions, 43 Mercer L. Rev. 853, 854 (1992). Most finance lessors view the "hell or high water" clause at issue in the cases at bar as sacrosanct. Huddleson, supra, 39 Ala. L. Rev. at 666.

A "finance lease" involves three parties — the lessee/business, the finance lessor, and the equipment supplier. The lessee/business selects the equipment and negotiates particularized modifications with the equipment supplier. Instead of purchasing the equipment from the supplier, the lessee/business has a finance lessor purchase the selected equipment, and then leases the equipment from the finance lessor.

> Traditionally, a finance lessor has been thought of as a passive lessor, whose transactions remain functionally the equivalent of an extension of credit. It is typically the lessee, not the lessor, who selects the goods in a "finance lease." Moreover, a finance lessor often has neither the opportunity nor the expertise to inspect the goods in order to discover defects in them. Given the limited function of the lessor, the lessee relies almost entirely on the supplier for representations, covenants, and warranties.

Huddleson, supra, 39 Ala. L. Rev. at 660.

> In effect, the [lessee/business] is relying upon the [supplier] to provide the promised goods and to stand by its promises and warranties; the [lessee/business] does not look to the [finance lessor] for these. The [finance lessor] is only a finance lessor, and deals largely in paper, rather than goods. In that situation it makes no sense to treat the [finance lessor] as a seller to the [business/lessee] with warranty liability, nor does it make any sense to free the [supplier] from liability for breach of promises and warranties that it would have given in an outright sale to the [business/lessee]. Usually, the [finance lessor] expects to be paid, even though the [equipment] might prove to be defective or totally unsuitable for the [lessee/business's] particular business.

2 J. White & R. Summers, Uniform Commercial Code, § 13-3 (a) (4th ed. 1995).

2. In Georgia, all lease contracts for "goods," including finance leases, first made or first effective on or after July 1, 1993, are governed by Article 2A of the Uniform Commercial Code. OCGA § 11-2A-101 et seq.; Ga. L. 1993, p. 633, § 5. Because the leases at issue were executed prior to the effective date of Article 2A, we must look to the

Georgia law relating to the lease of personal property that Article 2A supplanted — "a hybrid of the law of bailment, contract, UCC Article 2 (Sales of Goods), UCC Article 9 (Secured Transactions), together with common law principles concerning personal property and real estate leases." Sarah B. King, Commercial Code, Leases: Provide Regulations Relating to Leases of Goods, 10 G.S.U. L. Rev. 34 (1993).

Under pre-Article 2A Georgia law, the conduct of the parties to a lease finance transaction is governed by the terms of the lease. *Citicorp Industrial Credit v. Rountree*, 185 Ga. App. 417, 420 (364 SE2d 65) (1987). Georgia case law generally upholds the bargains struck by parties, as long as the contract is not the product of fraud (OCGA § 13-4-60), or is not violative of the public policy of this State. *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981). A finance lessor's disclaimer of warranties expressed clearly and unambiguously is not prohibited by law or public policy (*Petroziello v. United States Leasing Corp.*, 176 Ga. App. 858, 860 (338 SE2d 63) (1985)), and a finance lease may authorize a lessor to assign its rights in the contract free from claims and defenses which the lessee might have against the original lessor. *Short v. General Electric Credit Corp.*, 113 Ga. App. 476 (148 SE2d 450) (1966). A contractual requirement that the lessee make its rental payments is valid in the absence of fraud on the part of or imputed to the finance lessor. *Woods v. Advanta Leasing Corp.*, 201 Ga. App. 844 (1) (412 SE2d 607) (1991). See *Holcomb v. Commercial Credit Svcs. Corp.*, 180 Ga. App. 451 (349 SE2d 523) (1986).

The inclusion of a "hell or high water" clause, however, does not resolve the issue in favor of the assignee/lessors. In *Doss v. Epic Healthcare Mgt. Co.*, 901 SW2d 216 (Mo. App. 1995), the Court of Appeals of Missouri held that the clause did not protect an assignee who knew at the time of assignment that the agreement was in default, that the lessee no longer possessed the chattel, and that the agreement had been terminated. In Louisiana, the clause may not be enforced when the lessee withholds payment because the assignee lessor has not provided the lessee with peaceful possession of the equipment for the term of the lease. *Angelle v. Energy Builders Co.*, 496 S2d 509 (La. App. 1986). Most recently, the Kansas Court of Appeals concluded that the clause did not preclude a lessee from asserting equitable estoppel. *Toshiba MasterLease v. Ottawa Univ.*, 927 P2d 967 (Kan. App. 1996).

Each of the leases in the cases at bar clearly exclude warranty and promissory liability of the finance lessor and its assignees to Quick-Trip Printers, each states that Quick-Trip agreed to pay the full amount of the rental agreement to assignee/lessors, regardless of defect, damage, or unfitness of the equipment for any purpose, and each states that the lessee agreed not to assert against the assignee

lessors defenses it could assert against the original lessor. Thus, the contract precludes the business lessee from asserting the fraud of or imputable to the original finance lessor as a *defense* against the assignee lessors' claim for payment.

However, the business lessee in the case at bar did not wait until it was sued by the assignee/lessors to allege fraud. Instead, Quick-Trip Printers took the offensive, filing suit in an effort to enforce its statutory right (OCGA § 13-4-60) to rescind its lease contracts with the assignee/lessors on the ground that the equipment supplier's employees fraudulently induced Quick-Trip to enter into the equipment lease contracts with the original finance lessor. In order for the purported fraud of the employees of the equipment supplier to authorize rescission of the finance lease, their actions must somehow be imputed to the assignee lessors through the finance lessor. Although the finance leases clearly stated that Quick-Trip acknowledged that the employees of the equipment supplier were not the agents of the finance lessor, such a contractual statement is "not necessarily conclusive as to the non-existence of such a relationship." *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883 (1) (354 SE2d 210) (1987). In *Potomac*, evidence that the supplier's employees were trained with regard to completing the finance leasing documents and were authorized by the finance lessor to negotiate a finance lease for the finance lessor was sufficient to defeat the finance lessor's motion for directed verdict. However, the supplier's employee who merely submitted a business/lessee's credit application to the finance lessor for review and decision is not, as a matter of law, an agent of the finance lessor. *Gulf Winds v. First Union Bank*, 187 Ga. App. 383 (1) (370 SE2d 508) (1988).

In the cases at bar, appellee William McNatt testified on deposition that the equipment supplier's employees who purportedly made the fraudulent statements to the McNatts wanted the McNatts to sign a lease and told Mr. McNatt the monthly leasing costs. Mr. McNatt provided a financing statement to the supplier's employees as part of the effort to secure a finance lease, and the lease documents were presented to the McNatts by the supplier's employees. Mr. McNatt stated unequivocally on deposition that the equipment supplier's employees never represented themselves as being agents of the finance lessors, and Mrs. McNatt, who was also deposed, stated that the employees of the equipment supplier never discussed being employees of the finance lessors. We conclude from our review of the record that the equipment supplier's employees acted only as a conduit of information between the business lessee and the finance lessor; there is no evidence that the finance lease was negotiated by the supplier's employees pursuant to authorization given them by the finance lessor. In other words, there is no evidence of a relation-

ship pursuant to which the purported fraud of the supplier's employers could be imputed to the finance lessor and vitiate the contracts executed by Quick-Trip with the finance lessor. *Woods v. Advanta Leasing Corp.*, supra, 210 Ga. App. 844; *Holcomb v. Commercial Credit Svcs.*, supra, 180 Ga. App. 451. Contrary to the holding of the Court of Appeals, there is no material issue of fact concerning the imputation of fraud to the assignee/lessors and whether Quick-Trip was entitled to rescission of the assigned leases. As there is no evidence of fraud imputable to the assignee/lessors, the leases are not rescindable under § 13-4-60, and the "hell or high water" clauses contained in the lease are viable.

3. Quick-Trip Printers cited failure of consideration as a defense to the assignee/lessors' counterclaims for the unpaid rent. In light of its contractual agreement not to assert against the assignee/lessors any defense it might have against the original lessor, Quick-Trip is estopped to assert failure of consideration as a defense to the assignee/lessors' counterclaims. Furthermore, in the absence of fraud, a lessee is precluded from asserting the defense of failure of consideration against the assignee/lessors of a contract in which the lessee waived all express and implied warranties. *United States Leasing Corp. v. Jones Pharmacy*, 144 Ga. App. 26 (240 SE2d 300) (1977). As was discussed in Division 2, supra, there is no evidence of fraud imputable to the finance lessors. The Court of Appeals, citing its decision in *Granite Equip. Leasing Corp. v. Folds*, 133 Ga. App. 856 (212 SE2d 490) (1975), concluded that the contractual waiver of warranty was not effective against Quick-Trip since Quick-Trip asserted that the equipment received was not as orally promised by the supplier's employees (the alleged fraud which permeates these cases), and the serial numbers on the equipment received did not match the serial numbers contained in the leasing contract. In *Granite*, the Court of Appeals held that the lessee's defense of failure of consideration had not been waived by the disclaimer of warranty because the disclaimer applied to the *type* of machine for which the contract called, "a 'factory rebuilt' press," and not to that which was actually delivered — "a 'reconditioned' press." (Emphasis supplied.) See also *Avery v. Key Capital Corp.*, 186 Ga. App. 712 (1) (368 SE2d 364) (1988) (disclaimers in lease applicable to 1984 vehicle described therein, but not to 1983 model delivered). Linda McNatt testified in her deposition that the equipment listed in the lease agreements was delivered to Quick-Trip. Her husband did not dispute that the pieces received were the type of machine for which the contract called. He testified only that he noted discrepancies between the serial numbers listed on the contract for individual pieces, and the serial numbers of the parts actually delivered. There being no discrepancy in the *type* of equipment contractually promised and that actually delivered, the

contractual waiver of warranty was effective and defeated Quick-Trip's defense of failure of consideration.

4. Lastly, we address Quick-Trip's contention that the assignee lessors are liable to Quick-Trip for the negligent release of funds to Itex. Despite having an "Acknowledgement and Acceptance of Equipment by Lessee" which authorized the assignee/lessors to pay the equipment supplier, the assignee/lessors withheld payment from the supplier due to the business lessee's verbal notification, in response to inquiries made by the assignee/lessors, that the equipment was defective. According to the assignee/lessors, the funds were released to the supplier upon notification from the business lessee that the equipment problems had been resolved. The business lessee disputes the assignee/lessors' version of the facts. As there appears to be a genuine issue of material fact concerning the claim that the assignee/lessors negligently released the funds to the equipment supplier, we agree with the Court of Appeals that summary judgment in favor of the assignee/lessors on the business lessee's claim was inappropriate.

*Judgment affirmed in part and reversed in part. Fletcher, P. J., Sears, Hunstein, Carley, Thompson, JJ., and Judge Richard W. Story concur. Hines, J., disqualified.*

DECIDED JUNE 2, 1997 —
RECONSIDERATION DENIED JULY 30, 1997.

*Savell & Williams, Charles M. Dalziel, Jr., William E. Turnipseed,* for appellant (case no. S96G1641).

*Lamberth, Bonapfel, Cifelli & Stokes, Gary D. Stokes, Carter L. Stout, Stuart F. Clayton, Jr.,* for appellants (case no. S96G1642).

*Rumsey & Ramsey, Austin L. Ramsey III,* for appellees.