A98A0270. CARTER v. TOKAI FINANCIAL SERVICES, INC.
(500 SE2d 638)

BLACKBURN, Judge.

Tokai Financial Services, Inc. brought suit against Randy P. Carter for monies owed under Carter's guaranty of a telephone equipment lease agreement. The trial court granted summary judgment to Tokai, and Carter appeals. For the reasons set forth below, we reverse the trial court's grant of summary judgment to Tokai.

"In reviewing [a] grant or denial of summary judgment, this Court conducts a de novo review of the evidence." *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996). "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." (Punctuation omitted.) Id.

On January 3, 1996, Tokai's predecessor in interest, Mitel Financial, entered into a "Master Equipment Lease Agreement" (Agree-

---

[2] Philpot is the sole appellee here.

ment) with Applied Radiological Control, Inc. (ARC) for the lease of certain telephone equipment valued at $42,000. Carter personally guaranteed ARC's obligations under the Agreement. ARC made four rental payments and then defaulted on its obligations as of June 1, 1996. Thereafter, Tokai repossessed the telephone equipment and sold it for $5,900. Tokai did not notify Carter prior to such sale. Tokai then brought this suit against Carter, and the trial court awarded Tokai $56,765.74.

1. In his first enumeration of error, Carter contends the Agreement is a "finance agreement" rather than a true lease. More specifically, Carter contends that the Agreement was a disguised secured transaction subject to Article 9 of the Uniform Commercial Code (UCC), thereby requiring Tokai to notify Carter prior to the sale of the repossessed equipment and to conduct such sale in a reasonably commercial manner. We disagree.

As an initial matter, we note that Paragraph 13 of the Agreement states that each lease contemplated therein is a finance lease as defined by Article 2A of the UCC. "A 'finance lease' involves three parties — the lessee/business, the finance lessor, and the equipment supplier. The lessee/business selects the equipment and negotiates particularized modifications with the equipment supplier. Instead of purchasing the equipment from the supplier, the lessee/business has a finance lessor purchase the selected equipment, and then leases the equipment from the finance lessor." *Colonial Pacific Leasing Corp. v. McNatt*, 268 Ga. 265, 268 (1) (486 SE2d 804) (1997).

Carter contends, nonetheless, that the true intent of the parties was to enter into a security agreement. "Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and (a) [t]he original term of the lease is equal to or greater than the remaining economic life of the goods, (b) [t]he lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods, (c) [t]he lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or (d) [t]he lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement." OCGA § 11-1-201 (37).

Here, the Agreement's initial term was for five years, ARC was not required to renew the lease or purchase the telephone equipment at the end of the term, and ARC did not have the option to renew the lease or purchase the property at the end of the term for nominal con-

sideration. Therefore, the Agreement does not fit within the definition of a secured transaction provided by OCGA § 11-1-201 (37).

Furthermore, "it is commonly held that the 'best test' for determining the intent of an agreement which provides for an option to buy[ ] is a comparison of the option price with the market value of the equipment at the time the option is to be exercised. Such a comparison shows whether the lessee is paying actual value acquiring the property at a substantially lower price. . . . If, upon compliance with the terms of the 'lease,' the lessee has an option to become the owner of the property for no additional or for a nominal consideration, the lease is deemed to be intended for security. See OCGA § 11-1-201 (37)." (Punctuation omitted.) *Third Century v. Morgan*, 187 Ga. App. 718, 720 (2) (371 SE2d 262) (1988). ARC was given the option to purchase the telephone equipment in this case at the end of the lease term for its fair market value. "Additional consideration is not nominal if . . . when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed." OCGA § 11-1-201 (37) (x). Accordingly, the Agreement in this case must be considered to be a true lease, not a secured transaction. As a result, the procedural safeguards of Article 9 of the UCC are inapplicable to the matter at hand, and Carter's claims under this enumeration must fail. See *Mejia v. C & S Bank*, 175 Ga. App. 80, 82 (332 SE2d 170) (1985); *Tompkins v. Mayers*, 209 Ga. App. 809, 811 (2) (434 SE2d 798) (1993).

2. In his second enumeration of error, Carter contends that, even if the Agreement were a true lease, Tokai was still required to conduct the sale of the repossessed equipment in a commercially reasonable manner, citing sections 527 and 528 of Article 2A of the UCC. OCGA §§ 11-2A-527 and 11-2A-528.

"In Georgia, all lease contracts for 'goods,' including finance leases, first made or first effective on or after July 1, 1993, are governed by Article 2A of the Uniform Commercial Code. OCGA § 11-2A-101 et seq." *McNatt*, supra at 268 (2). The Agreement was entered into by the parties on January 3, 1996; therefore, it is subject to Article 2A of the UCC and §§ 527 and 528 thereof. The provisions of §§ 527 and 528 regarding damages available upon default are applicable "[e]xcept as otherwise provided with respect to damages liquidated in the lease agreement (Code Section 11-2A-504) or otherwise determined pursuant to agreement of the parties (Code Sections 11-1-102 (3) and 11-2A-503)." OCGA §§ 11-2A-527 (2) and 11-2A-528 (1). In this case, the Agreement "otherwise provides for damages liquidated in the lease agreement," specifically setting forth a formula to calculate such damages. As a result, OCGA §§ 11-2A-527 and 11-2A-528 are not applicable to the matter at hand, and the more general

directives of OCGA § 11-2A-504 are controlling.

According to OCGA § 11-2A-504, "[d]amages payable by either party for default, or any other act or omission, . . . may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission." OCGA § 11-2A-504 (1). Paragraph 12 of the Agreement provides that, upon default, Tokai's remedies include: (1) cancel all leases; (2) recover any accrued and unpaid rental payments; (3) if no stipulated value of loss is stated in the lease, recover liquidated damages equal to (a) the present value of all future rent discounted at a rate equal to the current discount rate of the Federal Bank of San Francisco plus one percent plus (b) the present value of the equipment's fair market value discounted at the same rate plus (c) the amount of any loss or reduction of tax benefits; and (4) sell the repossessed equipment without any duty to account to ARC for any proceeds with respect to the sale. Based on this provision, Tokai calculated its damages in the amount of $42,779.08.

"Determining whether such a clause constitutes an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court. To qualify as an enforceable liquidated damages provision three factors must be present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-estimate of the probable loss. . . . On summary judgment, [Tokai], as movant, has the burden of showing that as to the three prongs . . . no genuine issue of material fact exists." (Citations and punctuation omitted.) *Peterson v. P. C. Towers, L.P.*, 206 Ga. App. 591, 592-593 (3) (426 SE2d 243) (1992). Tokai has not carried this tripartite burden.

In this case, the sum designated to be liquidated damages cannot be considered to be a reasonable pre-estimate of probable loss caused by ARC's default. Under the provisions of the Agreement, Tokai is entitled to receive the present value of all future rent plus the present value of the equipment's fair market value at the end of the lease term. In addition, Tokai is allowed to sell the repossessed equipment without any duty to account for the proceeds of such sale. In other words, Tokai is allowed to receive the rent it otherwise would have received for the property along with full use of the property subject to the lease prior to the end of the term.[1]

This case is analogous to *Peterson*, supra, which regarded leased

---

[1] Tokai did credit Carter with the $5,900 it received from the sale of the repossessed goods; however, under the terms of the Agreement, Tokai had no obligation to do so.

real estate. In analyzing the damages clause there, we held, "[the lease] provisions give the landlord the benefit of both present possession of the premises, and the present value of all future rent. Reduction of the accelerated rent to present value is a factor tending to establish that the accelerated rent sum is a reasonable estimate of probable loss. See *Adams v. D & D Leasing Co.*, 191 Ga. App. 121, 123-124 (381 SE2d 94) (1989). However, both possession of the premises and a present lump sum award of future rent without any calculation of damages based on the future rental value of the premises, and the likelihood of reletting, provides [the landlord] with payment potentially bearing no reasonable relation to actual damages." *Peterson*, supra at 593-594 (3). The same general principle applies here. Tokai cannot have the benefit of both the property and the value of all future rent payments. In essence, this would place Tokai in a superior position following default to that which it was in before such default occurred. Therefore, the provision for damages under the contract is a penalty rather than liquidated damages.[2] Accordingly, summary judgment on the issue of damages was improper in this case.

3. In his final enumeration of error, Carter contends that the trial court erroneously admitted the affidavit of Larry M. Blackman into evidence, in violation of hearsay rules relating to business records. We disagree.

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter." OCGA § 24-3-14 (b). "This Code section shall be liberally interpreted and applied." OCGA § 24-3-14 (d). In his affidavit, Blackman stated that the information contained in his affidavit was made after a review of Tokai's business records "maintained by [Tokai] which are in my care, custody and control, which are maintained in the course of [Tokai's] business." As such, the admission of Blackman's affidavit and the accompanying attach-

---

[2] We note that the fact that Tokai credited Carter, as ARC's guarantor, with the proceeds received from the sale of the repossessed equipment, net of remarketing expenses, does not change the outcome. As explained above, the Agreement, as drafted, cannot properly be enforced. In addition, Tokai has admitted that it is doubtful that the $5,900 it reimbursed to Carter represents the full fair market value of the property. Therefore, even with the reimbursement made by Tokai, Tokai remains in a better position than it would have been had the lease been enforced, and the damages clause in this case functioned as a penalty.

ments complied with the foundation requirements of OCGA § 24-3-14 (b).

Tokai's motion for assessment of penalties for a frivolous appeal against Carter is hereby denied.

*Judgment reversed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 31, 1998.

*Small, White & Marani, Gus H. Small, Jr.,* for appellant.
*Victoria J. Hoffman,* for appellee.