In re BALDWIN RENTAL CENTERS, INC., Debtor.

Case Credit Corporation, Movant,

v.

Baldwin Rental Centers, Inc., Respondent.

Bankruptcy No. 97–50930.

United States Bankruptcy Court, S.D. Georgia, Waycross Division.

Dec. 1, 1998.

David A. Garland, Albany, GA, for Case Credit Corporation.

William S. Orange, III, Brunswick, GA, for Baldwin Rental Centers, Inc.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on a Motion filed by Case Credit Corporation ("Case") to Allow Certain Lease Payments as an Administrative Expense Priority. This is a core matter within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

#### Findings of Fact

Baldwin Rental Centers, Inc. ("Debtor") entered into fourteen equipment leasing agreements with Case. It was Debtor's practice to sublease this equipment to its customers at a higher price than that paid under its agreement with Case, thereby generating profit. Debtor, however, was unable to generate enough profit to stay current on the lease payments owed to Case, and on August 20, 1997, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

Baldwin Rental, as Debtor–in–Possession ("DIP"), continued to possess and sublease the leased equipment post-petition. On January 7, 1998, after a hearing on October 12, 1997, this Court entered a consent order allowing DIP to assume five of the fourteen unexpired leases ("assumed leases") and reject the remaining nine leases ("rejected leases"). At the time of the October hearing, the rejected leases had accrued unpaid rent

post-petition in an amount totaling $20,-823.32, and they had produced revenue totaling $35,260.17.

On January 30, 1998, DIP rejected the assumed leases. Each of the assumed leases contained a liquidated damages clause which provided:

> I [Debtor] agree that you [Case] may sell the Equipment (including at wholesale), release it or otherwise dispose of it in a commercially reasonable manner. I agree to pay you, as liquidated damages, an amount equal to (a) any unpaid rent, plus (b) the present value as of the date of default of the rent for the remainder of the term (using the Present Value Rate), plus (c) the Purchase Option Price, plus, (d) any excess hour charges, plus (e), to the extent permitted by law, reasonable attorney fees and legal expenses incurred by you in connection with this Agreement, plus (f) any other liabilities under this Agreement, minus the present value of the net proceeds resulting from the disposition of the Equipment (whether by sale or re-lease).

In aggregate, the unpaid rent on the leases totaled $31,586.84; the present value of the future rent for the remaining term under each of the leases totaled $76,302.88; and the purchase option price (i.e. residual value) of the equipment under the leases totaled $148,-717.39. Debtor initially requested the equipment be disposed of by public auction. However, Debtor withdrew this request and Case sold the equipment at a private sale for wholesale value. The aggregate price received for the five pieces of equipment was $151,600.00.[1] Therefore, the liquidated damages provision results in total damages of $105,007.11 for rejection of the assumed leases.

Case requests that $125,830.43 ($20,823.32 in accrued post-petition rent for the rejected leases, plus the $105,007.11 in liquidated damages for the assumed leases) be given administrative expense priority and be paid in full prior to or at the time of confirmation of Debtor's Chapter 11 plan of reorganization. Debtor disputes both the amount due for rejecting the assumed leases and the amount qualified for administrative expense priority. Debtor first argues that the liquidated damages provision is unenforceable as a penalty. Thus, Debtor claims damages resulting from breach of the assumed leases should be computed under state law. Next, Debtor claims that any future rents that may be due under the assumed leases, and the rent accrued post-petition under the rejected leases, conferred no benefit on the estate and, therefore, do not qualify for administrative expense priority, but rather should be treated as general unsecured claims. The Court finds 1) that the liquidated damages provision is enforceable, 2) that in this case, the plain language of the Bankruptcy Code requires a finding that all damages resulting from rejection of the assumed leases, including future rents, are administrative expenses, and 3) that the rent accrued post-petition on the rejected leases did confer a benefit on the estate and is, therefore, an administrative expense.

*Conclusions of Law*

*I. Liquidated Damages*

The assumed leases each contain a formula to be used to liquidate damages in the event of breach. "[A]ll lease contracts for 'goods' ... first made or first effective on or after July 1, 1993, are governed by Article 2A of the Uniform Commercial Code." *Colonial Pacific Leasing Corp. v. McNatt,* 268 Ga. 265, 268, 486 S.E.2d 804, 807 (1997). These lease agreements were first effective in 1995. Therefore, Article 2A governs the enforceability of the liquidated damages provisions.

O.C.G.A. § 11–2A–504(1) provides:

> Damages payable by either party for default ... may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default....

---

[1]. The assumed leases covered four backhoes and one wheel loader. The wheel loader sold for $43,000.00. Three of the backhoes sold for $27,-150.00 apiece. The fourth backhoe was stolen before the sale. Case is seeking to recover the value of the backhoe from its insurance company. However, for purposes of this opinion, the Court finds that the fourth backhoe would likely have also been sold for $27,150.00.

In creating this rule, the drafters of the UCC made this comment:

> Many leasing transactions are predicated on the parties' ability to agree to an appropriate amount of damages or formula for damages in the event of default or other act or omission. The rule with respect to sales of goods (Section 2–718) may not be sufficiently flexible to accommodate this practice. Thus, consistent with the common law emphasis upon freedom to contract with respect to bailments for hire, this section has created a revised rule that allows greater flexibility with respect to leases of goods.
>
> . . . .
>
> . . . . By deleting the reference to unreasonably large liquidated damages [contained in Section 2–718(1)] the parties are free to negotiate a formula, restrained by the rule of reasonableness in this section. These changes should invite the parties to liquidate damages.

UCC § 2A–504(1), Official Comment.[2] Thus, parties to a lease are encouraged to liquidate their damages subject only to the rule of reasonableness. Whether a liquidated damages clause is enforceable is a question of law. *Carter v. Tokai Fin. Servs., Inc.*, 231 Ga.App. 755, 758, 500 S.E.2d 638, 641 (1998). In Georgia, three factors must be present for the clause to be enforceable:

> First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-estimate of the probable loss.

This constitutes a two-part test: 1) difficulty of estimation, and 2) reasonable pre-estimation of probable loss. Whether the clause is a penalty is determined by the second part of the test. The moment of inquiry to determine reasonableness is at the time the parties entered into the agreement, and a reasonable provision that in hindsight contains an inaccurate estimation of the probable loss should not be rendered unenforceable. *See Coastal Leasing Corp. v. T–Bar S Corp.*, 128 N.C.App. 379, 496 S.E.2d 795, 798 (N.C.Ct. App.1998).

In the only Georgia case to interpret section 11–2A–504(1), the Georgia Court of Appeals struck down the liquidated damages provision at issue as an unenforceable penalty. *Carter*, 231 Ga.App. at 759, 500 S.E.2d at 641. The clause provided that upon default, the lessor could recover 1) accrued and unpaid rent, plus 2) the present value of all future rent plus one percent, plus 3) the present value of the equipment's residual value. In addition, the lessor could sell the equipment subject to the lease without having to account to the lessee for any of the sale proceeds. *Id.* at 758, 500 S.E.2d at 641. The court found that reducing the future rent to present value indicated the clause was a reasonable estimate of probable loss. *Id.* at 759, 500 S.E.2d at 641. However, the fact that the clause allowed the lessor to retain the value of the equipment as well as the value of all future rental payments put the lessor in a better position following default than he would have been in had the lease been fully performed. Therefore, the liquidated damages provision was found to be an unenforceable penalty. *Id.*

In another case interpreting the reasonableness requirement of section 2A–504, the Court of Appeals of North Carolina found that a liquidated damages clause in an equipment leasing contract was reasonable because it allowed the lessor to accelerate the balance of the lease payments while also requiring it to credit the lessee with any sums received from the sale or re-lease of the equipment. *Coastal*, 496 S.E.2d at 799. The court noted that this formula put the lessor in the same position it would have been in had the lease been fully performed; thus, the clause was a reasonable estimation of the then-anticipated damages in the event of default. *Id.*

---

**2.** When a section of the Uniform Commercial Code is adopted verbatim by the Georgia Legislature, as section 11–2A–504(1) was here, "the intentions of the drafters of the Uniform Commercial Code as evidenced in the official comments to the Uniform Commercial Code should be given due consideration." *Warren's Kiddie Shoppe, Inc. v. Casual Slacks, Inc.*, 120 Ga.App. 578, 580, 171 S.E.2d 643, 645 (1969).

In addition to the above-referenced cases, Case urges this Court to consider a case decided by the Ninth Circuit in which the court considered the reasonableness of a liquidated damages provision similar to those in this case. *See Siletz Trucking Co. v. Alaska Int'l Trading Co.,* 467 F.2d 961, 963 (9th Cir.1972). In *Siletz,* the court found that discounting the future rent to present value and then reducing this amount by the difference between the value of the leased property at the time of default and the residual value were "sufficient elements of a fair liquidated damages provision." *Id.*

The above cases illustrate that so long as the liquidated damages formula puts the lessor in no better position than it would otherwise be in had the lease been fully performed, the provision is likely to be a reasonable pre-estimate of probable loss. The formula is likely to put the lessor in such a position if it contains two elements in its calculation: 1) the balance of the lease payments reduced to present value, and 2) a credit to the lessee for the amount the lessor receives, or would receive, upon selling or releasing the property subject to the lease.

The Court now turns to the liquidated damages provision in the case at hand. The formula provides that Case is entitled to 1) any accrued, unpaid rent at the time of breach, plus 2) the present value of the rent for the remainder of the lease term, plus 3) the residual value of the equipment, minus 4) the present value of the net proceeds resulting from disposition of the equipment.[3] Debtor argues that the formula's inclusion of the residual value of the equipment, which Debtor was never obligated to pay, makes the provision a penalty. While Case's inclusion of this amount in the formula seems misplaced,[4] it does not render the provision unenforceable.

Initially, the Court notes that this formula does provide for reducing the future rent to present value and crediting Debtor with the

proceeds from Case's disposition of the equipment. In addition, the Court finds that the formula leaves Case in no better position than it would have been in had the lease been fully performed by Debtor.

Had the lease been fully performed, Case would have received from Debtor, at present value, $107,889.72 (accrued rent plus the present value of future rent). Plus, at the end of the lease term, Case would have had possession of five pieces of equipment with an estimated combined value of $148,717.39 that it could sell to Debtor or a third party. Thus, Case could have potentially received $256,607.11 if Debtor had fully performed its obligations under the lease. Under the liquidated damages formula, Case received $151,600 for the sale of the equipment. This was $2,882.61 more than the estimated value of the equipment one year later. The $107,889.72 in rent owed to Case under the lease agreement, and provided for in the liquidated damages provision, was reduced by this $2,882.61 difference, thus requiring Debtor to pay the remaining $105,007.11 in damages. Therefore, under the liquidated damages provision, Case receives $256,607.11 (accrued rent and the present value of future rent due under the lease from Debtor, plus the proceeds from the sale of the equipment), the same amount Case would have received under the lease if Debtor had fully performed. Because the liquidated damages provision leaves Case in no better position that it would be in had the lease been fully performed, the Court finds that the liquidated damages provision is reasonable.

Further evidence that the liquidated damages provision contained in these leases is reasonable is the fact that it is just such a provision contemplated by the drafters of section 2A–504. The Official Comment to section 2A–504 notes that a common liquidated damages formula in leasing practice

> provides that the sum of lease payments past due, accelerated future lease pay-

---

3. The clause provided for certain other damages that the lessor chose not to include in its determination of damages.

4. The Court notes that the formula calls for reducing proceeds from the disposition of the

equipment to present value, while not reducing the residual value to present value. However, such an oversight does not give rise to a finding that the provision is a penalty.

ments, and the lessor's estimated residual interest, less the net proceeds of disposition (whether by sale or re-lease) of the leased goods is the lessor's damages. Tax indemnities, costs, interest and attorney's fees are also added to determine the lessor's damages.

UCC § 2A–504(1), Official Comment. This provision is identical to the provisions in the assumed leases with the only difference being that none of the figures in the Comment are reduced to present value. The Comment goes on to state that "[w]hether these formulae are enforceable will be determined in the context of each case by applying a standard of reasonableness in light of the harm anticipated when the formula was agreed to." *Id.* Considering that the formula in the assumed leases provides for damages equal to what Case would have received had the lease been fully performed, this Court finds that the liquidated damages provisions are reasonable in this case. Therefore, Debtor is liable for $105,007.11 in liquidated damages flowing from the breach of the assumed leases.

The Court now turns its attention to Case's claim that the liquidated damages provided under the assumed leases and the rent accrued post-petition on the rejected leases qualify as administrative expenses.

## II. *Administrative Expenses*

11 U.S.C. § 365 governs the treatment of unexpired leases. This provision allows the trustee or DIP, subject to the court's approval, to assume or reject any such lease. 11 U.S.C. § 365(a). Debtor's rejection of an unexpired lease constitutes breach of that lease. *Id.* § 365(g). The type of claim the other party to the lease will have as a result of the breach often depends on whether the lease had been previously assumed.

A. *Claims Resulting From Rejection of an Unexpired Lease Previously Assumed—Case's Claim for $105,007.11 in Liquidated Damages for the Assumed Leases*

The plain language of sections 365 and 502 of the Code mandate administrative expense priority for damages flowing from the rejection of an assumed lease. Section 365(g) indicates clear congressional intent to treat the expenses arising from the rejection of an assumed lease differently than those expenses arising from the rejection of a lease that was not previously assumed. Section 365(g)(1) provides that if a lease was not previously assumed, the breach is deemed to have occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). Section 365(g)(2) provides that if the lease was previously assumed, the breach is deemed to have occurred at the time of rejection, i.e. post-petition. *Id.* § 365(g)(2).[5] That section 365(g)(2) expenses are to receive administrative expense priority is evidenced by section 502(g), which provides in pertinent part:

A claim arising from the rejection, under section 365 of this title ... of an ... unexpired lease of the debtor that has *not* been assumed shall be determined, and shall be allowed under ... this section, the same as if such claim had arisen before the date of the filing of the petition.

*Id.* § 502(g) (emphasis added). Section 502 governs the allowance of claims *other than* administrative claims. Section 502(g) describes a section 365(g)(1) expense and directs that it be treated as a general unsecured claim. However, there is no such similar provision in section 502 for claims arising under section 365(g)(2) for the rejection of an unexpired lease that *has* been assumed. This silence in section 502 clearly indicates Congress's intent to treat rejection of assumed leases as administrative expenses. *In re Monica Scott, Inc.*, 123 B.R. 990, 990 n. 2 (Bankr.D.Minn.1991). *See also Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 28 (2d Cir.1996); *GATX Leasing Corp. v. Airlift Int'l, Inc. (In re Airlift Int'l, Inc.)*, 761 F.2d 1503, 1509 (11th Cir.1985) (dictum).

Despite this plain language, Debtor asserts that not all liabilities flowing from the assumed leases should be given administrative expense priority. In particular, Debtor ar-

---

5. The rules are different if there has been a conversion in the bankruptcy case. *See* 11 U.S.C. § 365(g)(2)(B). Because there has been no conversion here, discussion of those rules is unnecessary.

gues that claims for future rents for the unexpired term of the assumed leases should not receive such treatment because such expenses confer no benefit on the estate and could possibly cause its Chapter 11 reorganization plan to fail.

Many courts have struggled with the issue of granting administrative expense priority to a debtor's liability for paying future rent as part of damages flowing from its rejection of an assumed lease. The difficulty in this issue is that it appears Congress never contemplated the hardship that such damages inflict. A discussion of what an administrative expense is, as well as the purpose for creating such a category of expenses, will help to illustrate the problem.

■■■ Section 503(b) governs the allowance of administrative claims. 11 U.S.C. § 503(b). In addition to other enumerated expenses, this section provides, in pertinent part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—(1)(A) the actual, necessary costs and expenses of preserving the estate....

*Id.* § 503(b)(1)(A). Because Congress inserted the word "including" before the expenses listed in section 503(b)(1)(A), the Eleventh Circuit, in interpreting this provision, has concluded that "expenses not explicitly listed in section 503(b) can receive administrative-expense status in one of two ways, either as a nonlisted 'actual, necessary' expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general." *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)*, 963 F.2d 1449, 1452 (11th Cir.1992). Thus, first priority claims include claims that serve to preserve the bankrupt estate, as well as claims that do not. *Id.* at 1456. However, the Eleventh Circuit also advises that section 503 priorities are to be narrowly construed to further the purpose of the provision. *See Varsity Carpet Servs. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1377 (11th Cir.1994). Its purpose is to encourage creditors to cooperate with the debtor's reorganization efforts so that the debtor can effectively reorganize

and continue its business thereby maximizing the value of the estate for the benefit of all creditors. *See Mining*, 963 F.2d at 1452. To help achieve this purpose, administrative claims must be paid in full prior to or on the date of confirmation of the debtor's reorganization plan, 11 U.S.C. § 1129(a)(9)(A); *In re Isis Foods, Inc.*, 27 B.R. 156, 158 (W.D.Mo. 1982), as a first priority. 11 U.S.C. § 507(a)(1).

■■■ The policy behind granting administrative expense priority under section 503(b)(1)(A) to those expenses actual and necessary to preserve the estate is to prevent unjust enrichment of the debtor's estate. Therefore, to qualify as actual and necessary, the expense must have conferred a benefit to the debtor that is fundamental to the conduct of its business. *Richardson*, 19 F.3d at 1383. It is here that the Code's apparent requirement that future rent be treated as an administrative expense becomes troublesome. Lease provisions often provide that if breached, the debtor is liable for all future rents due for the unexpired term of the lease. However, because the lessor has often repossessed the property subject to the lease, the debtor receives no benefit from the lease during the unexpired term that is being paid for. In addition, because administrative expenses must be paid in full upon confirmation of a plan of reorganization, the amount of future rent, depending on the length of the unexpired term, may prohibit the debtor from effectively reorganizing its company. Thus the policy behind granting administrative expense priority to those expenses actual and necessary to preserving the estate appears unsatisfied as the estate receives no benefit from the expense, and further, the magnitude of the expense may cause the plan to fail contrary to section 503's general purpose of enabling the debtor to effectively reorganize its business.

A number of courts have dealt with this apparent contradiction between the plain language and purpose of the Code where future rent liability is at issue. The position taken by a majority of those courts was recently adopted by the Second Circuit in *Nostas Assocs. v. Costich (In re Klein Sleep Prods.,*

*Inc.),* 78 F.3d 18 (2d Cir.1996).[6] In *Klein,* the Second Circuit found that a debtor's liability for future rents do qualify as actual, necessary expenses of preserving the estate and, thus, concluded that they are entitled to administrative expense priority under section 503(b)(1)(A). *Id.* at 30. The court found that in the case of a lease rejected post-assumption, the resulting expenses satisfy the "benefit" requirement of section 503(b)(1)(A) through the act of assumption itself. *Id.* at 25–26. *See also Airlift,* 761 F.2d at 1509 (dictum); *In re Norwegian Health Spa, Inc.,* 79 B.R. 507, 509 (Bankr. N.D.Ga.1987); *Samore v. Boswell (In re Multech Corp.),* 47 B.R. 747, 750 (Bankr. N.D.Iowa 1985). *But see In re Johnston, Inc.,* 164 B.R. 551, 556 (Bankr.E.D.Tex.1994) ("[T]he fact [of] assumption of the lease should not be the determinative factor that all expenses and liabilities are an administrative expense."). The court's reasoning is as follows: When a DIP assumes a lease, the lease is assumed in its entirety. *See Airlift,* 761 F.2d at 1508. Thus, the estate gets not only the benefits of the lease, but also any burdens it carries along with it. A DIP assumes a lease if it finds that it is in the best interests of the estate and its creditors to do so. *Id.* at 1509. Further, the court must find that assuming the lease will be in the best interests of the estate to permit its assumption. *Klein,* 78 F.3d at 25. Therefore, before the lease is assumed, both the debtor and the court have determined that the entire lease, complete with any burdens it may pose, benefits the estate. The DIP cannot then seek to avoid these burdens when "the deal turn[s] sour". *Id.* at 26. As a result, the court found that all resulting damages from a lease rejected post-assumption are to be paid as a section 503(b)(1)(A) administrative expense. *Id.* at 30.

Courts that disagree with the result reached in *Klein* do so on the basis that claims for administrative expenses must be construed narrowly "in order to maximize the value of the estate for the benefit of the other creditors." *See In re Johnston, Inc.,* 164 B.R. 551, 555 (Bankr.E.D.Tex.1994) (cita-

tions omitted). In *Johnston,* the court noted that any benefit to the estate from the lease was lost when the lease was rejected and the debtor lost the use of the subject matter of the lease. *Id.* Thus, the court found that "[a]warding an administrative expense claim for the loss of future rents would be contrary to the intent of § 503(b) by unjustly enriching [the lessor] and could very well eliminate any distribution to the general unsecured creditors." *Id.* Further, the court noted that a court's belief that a lease is beneficial to the estate is based on facts as they existed at the time of assumption. The court felt such a belief could not be a determinative factor in concluding that all liabilities and expenses arising from rejecting the lease when that belief turned out to be inaccurate are an administrative expense. *Id.* at 556. Therefore, the court found that the loss of future rents resulting from rejection of the assumed lease should not be given administrative expense priority. *Id.*

While it is tempting for this Court to follow the reasoning of the court in *Johnston,* it cannot ignore the plain language of sections 365(g) and 502(g) which clearly require all liabilities flowing from the rejection of an assumed lease to be accorded administrative expense priority. The plain meaning of a statute must control unless its application produces an absurd result. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 243, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.") (citations omitted). Requiring a debtor to pay for future liabilities that provide no benefit to the estate as an administrative expense, when doing so may either 1) cause the estate to be completely depleted so as to wipe out all general unsecured claims, or 2) prevent any possibility of reorganization—while clearly required by sections 365(g) and 502(g)—would effectively nullify and render superfluous the purpose and policies of sec-

---

**6.** In deciding the case, the Second Circuit made many references to dicta contained in an opinion by the Eleventh Circuit, *GATX Leasing Corp. v.*

*Airlift Int'l, Inc. (In re Airlift Int'l, Inc.),* 761 F.2d 1503, 1509 (11th Cir.1985).

tion 503. Such a result, in this Court's opinion, would be absurd. However, unless this Court finds itself faced with those facts, it must apply the plain language of the statute.

In this case, the Court finds that requiring Debtor to pay the amount provided under the liquidated damages provision as an administrative expense upon confirmation of its Chapter 11 plan of reorganization does not produce an absurd result. In this instance, Debtor is required to pay $105,007.11 in damages for breaching five assumed leases. This amount is less than one year's rent under the agreements. Debtor chose to assume these leases on the assumption that they would produce a benefit for the estate. Debtor received this benefit from October 23, 1997 to January 30, 1998. Having to pay less than one year's rent for the subsequent breach of these agreements seems to this Court to be a cost fundamental to the conduct of its business. While it might be extreme to require Debtor to pay these damages in full upon confirmation of its plan, the Court does not find that such a result is absurd.

Debtor urges the Court to consider the consequences that would result if Debtor rejected the assumed leases very near to the beginning of the lease term. In such a case, Debtor would be liable for the present value of approximately four years of future rent for which the estate would receive no benefit. In addition, Debtor would likely be unable to pay such an amount upon confirmation of its plan, thus making a successful reorganization impossible. Without considering that these damages would likely be greatly reduced by the proceeds from the sale or re-lease of the equipment, the Court finds that such facts as these may very well produce an absurd result. But these are not the facts before this Court today. Therefore, unless faced with facts that may produce such an absurd result, this Court is bound by the Supreme Court's mandate that the plain meaning of a statute must control. *Ron Pair,* 489 U.S. at 243, 109 S.Ct. at 1031, 103 L.Ed.2d 290. The plain language controls the facts of this case, and the plain language of sections 365(g)(2) and 502(g) require the $105,007.11 expense incident to Debtor's rejection of the assumed

leases be accorded administrative expense priority.

The Court now turns its attention to Case's claim that the $20,823.32 in accrued post-petition rent for the rejected leases also qualify for administrative expense priority. The Court finds that they do.

**B.** *Claims Resulting From Rejection of an Unexpired Lease NOT Previously Assumed—Case's Claim for $20,823.32 in Accrued Post–Petition Rent for the Rejected Leases*

As stated previously, section 365(g)(1) governs rejected leases not previously assumed. The breach is deemed to have occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). This gives rise to a pre-petition claim under section 502(g) which is allowed as a general unsecured claim, not an administrative expense. *Klein,* 78 F.3d at 26; *Airlift,* 761 F.2d at 1509 (dictum). However, "the estate is liable for the reasonable value of the use and occupancy of the [equipment] during the period between filing and ... rejection of the unexpired lease." *Airlift,* 761 F.2d at 1508. *See also In re Bridgeport Plumbing Prods., Inc.,* 178 B.R. 563, 565 (Bankr.M.D.Ga.1994). This is to prevent unjust enrichment to Debtor's estate for the benefit it received from the leases before they were rejected. *Bridgeport,* 178 B.R. at 566 (citing *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir.1960)). Therefore, the value of use during this period is accorded administrative expense priority as an actual, necessary cost of preserving the estate under section 503(b)(1)(A). However, in accordance with the policy of construing section 503(b) narrowly, " 'there must be an actual, concrete benefit to the estate before a claim is allowable ...' as an administrative expense." *Broadcast Corp. v. Broadfoot, II (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530, 1532 (11th Cir.1986) (quoting *Broadcast Corp. v. Broadfoot,* 54 B.R. 606, 613 (N.D.Ga.1985)).

That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving

the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

.... Each case must be judged subjectively. The treatment of similar contracts may vary with the facts of the case, the trustee's need for the subject matter of the [unexpired lease], and the benefits to be derived by the bankrupt estate.

*Id.* The value of use and occupancy is presumed to be the rental price stated in the lease agreement unless the Court has evidence of a different value. *Bridgeport,* 178 B.R. at 565 (citing *Airlift,* 761 F.2d at 1508). The burden of proving entitlement to an administrative expense is on the creditor. *Id.* at 569.

■ Here, Debtor had the benefit of these leases from the date the petition was filed on August 20, 1997, until the leases were rejected on October 23, 1997. During that time, the leases accrued $20,823.32 in unpaid rent. Meanwhile, the leases generated approximately $35,260.17 in revenue.

Debtor, however, disputes that it benefitted from these leases during this gap period. Debtor argues that any perceived benefit from the leases was illusory. Debtor notes that it had other equipment available for rent to its customers that was not subject to Case's leases. Thus, Debtor argues that if its employees arbitrarily chose to rent equipment subject to Case's lease to its customer while the other equipment sat idle, Debtor really received no benefit at all. The Court is unpersuaded by this argument. Debtor has stipulated that the leased equipment generated substantial revenue. In addition, the availability of the leased equipment benefitted Debtor by enabling it to meet the demands of its customers. Under these circumstances, this Court does not find that the

benefit to Debtor was merely illusory.[7] Therefore, the estate is liable for the rent accrued post-petition as an administrative expense. The Court has no evidence before it that the rental value provided in the contracts is not the reasonable value for the use of the equipment. Therefore, the Court will use the rental value as provided in the lease agreements. The total amount of administrative expense priority for the post-petition use and occupancy of the equipment subject to the rejected leases is $20,823.32.

In conclusion, the liquidated damages provision contained in the assumed leases represents a reasonable preestimate of the damages suffered by Case in the event of breach. These provisions produce a total of $105,-007.11 in liquidated damages. While requiring Debtor to pay this amount upon confirmation of its plan of reorganization may seem extreme, it is not absurd. Therefore, as required by the plain language of the Code, the $105,007.11 in damages resulting from Debtor's breach of the assumed leases is accorded administrative expense priority. In addition, to prevent unjust enrichment to Debtor for the benefit received from the use and occupancy of the equipment subject to the rejected leases, the $20,823.32 in unpaid rent accrued post-petition due under those leases is also accorded administrative expense priority.

### III. *Statement of Claim*

Case's motion requests the allowance of administrative expense claims in the amounts stated herein. While it is possible to establish Case's entitlement to payment by way of its motion, the proof by Case is incomplete for that purpose. Case's filing of the motion reflects a concern for the administrative priority of the claims without fully addressing the entire factual circumstances of the claims themselves.[8] Case's motion rests partly on proof of its claim and partly on assumptions. Before Case can enjoy the benefit of the findings of fact and law as to administrative expense priority, a proof of claim will have to

---

7. The parties stipulated that two of the rejected leases accrued more unpaid rent than revenue generated. This does not change this Court's analysis. The fact that these leases generated revenue at all evidences benefit to the estate.

Further, as previously stated, these leases benefitted Debtor by making equipment available to satisfy its customers' demands.

8. See footnote 1.

be filed. The order entered pursuant to this opinion will be without prejudice as to Debtor's right to contest the amount of Case's claims on matters such as valuation and commercial reasonability of the sale of the leased equipment. Further, the Court reserves the right to reconsider the issue of administrative expense priority in the event Case's claims substantially exceed the amount stated by the motion.

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that the liquidated damages provision contained in the assumed leases are reasonable and enforceable pursuant to O.C.G.A. § 11–2A–504(1); and it is hereby further

ORDERED that, in accordance with the plain language of 11 U.S.C. §§ 365(g)(2) and 502(g), the liquidated damages are administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A); and it is hereby further

ORDERED that the unpaid rent accrued post-petition on the rejected leases are administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A); and it is hereby further

ORDERED that Case is not entitled to payment of these administrative expenses until a proof of claim for such expenses is filed in this case and any dispute as to the amount of such expenses is resolved; and it is hereby further

ORDERED that this order is issued without prejudice as to Debtor's right to contest the amount of any such claim; and it is hereby further

ORDERED that the Court reserves the right to reconsider the issue of administrative expense priority in the event Case's claim is established in an amount which substantially exceeds the amount stated by the motion.