In re MONTGOMERY WARD HOLD-
ING CORP., a Delaware corpora-
tion, et al., Debtors.

Montgomery Ward & Co., Incorporated,
et al., Appellants,

v.

Meridian Leasing Corporation,
Appellee.

Bankruptcy No. 97–1409–PJW.
Civ.A. No. 01–56–JJF.

United States District Court,
D. Delaware.

Oct. 22, 2001.

Daniel J. DeFrancheschi, Richards, Layton & Finger, P.A., Wilmington, Delaware, of counsel Richard A. Chesley, Kelley M. Griesmer, Jones, Day, Reavis & Pogue, Chicago, Illinois, for reorganized debtors.

John D. Demmy, Stevens & Lee, P.C., Wilmington, Delaware, of counsel Howard L. Teplinksi, Seidler & McErlean, Chicago, Illinois, for Meridian Leasing Corporation.

## OPINION

FARNAN, District Judge.

Presently before the Court is an appeal by Montgomery Ward Holding Corp. ("MW Corp.") and Montgomery Ward & Co., Incorporated ("Montgomery Ward") (collectively, "the Reorganized Debtors") from the December 13, 2000 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting in part and denying in part, the Supplemental Motion Of Reorganized Debtors For An Order Disallowing And Reducing Certain Claims Of Meridian Leasing Corporation. Specifically, the Reorganized Debtors appeal that portion of the Order denying the Reorganized Debtors' request to reduce the amount of the rejection damages claim that Meridian Leasing Corporation filed against Montgomery Ward (the "Claim") and allowing the Claim in the amount of $3,500,115. For the reasons set forth below, the decision of the Bankruptcy Court will be reversed.

## BACKGROUND

### I. Procedural Background

On July 7, 1997, the Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Reorganized Debtors' Chapter 11 cases were consolidated for procedural purposes only and were administered jointly. The Reorganized Debtors continued in possession of their respective properties and operated and managed their businesses, as debtors-in-possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

On April 30, 1999, the Reorganized Debtors filed a joint plan of reorganization. The joint plan of reorganization was subsequently amended (the "First Amended Plan"), and the Bankruptcy Court confirmed the First Amended Plan on July 15, 1999. The First Amended Plan became effective on August 2, 1999.

The instant dispute arises from Proof Of Claim No. 6454 filed by Meridian Leasing Corporation ("Meridian") against Montgomery Ward, as guarantor of an equipment lease between Lechmere, Inc. ("Lechmere"), a wholly-owned subsidiary

of the Reorganized Debtors, and Meridian. Lechmere and Meridian originally entered into the Master Lease Agreement (the "Master Lease") on October 5, 1995. Thereafter, Lechmere and Meridian entered into two supplements to the Master Lease, numbered 1 and 2 ("the Supplements") for additional equipment. Montgomery Ward guaranteed Lechmere's obligations under the Master Lease and the Supplements (collectively "the Leases").

Shortly after the Petition Date, the Reorganized Debtors and Meridian entered into an Equipment Disposition Agreement whereby the Reorganized Debtors agreed to reject the Supplements pursuant to Section 365 of the Bankruptcy Code and Meridian reserved its right to pursue rejection damages under the leases. By Order dated December 3, 1997, the Bankruptcy Court granted the Reorganized Debtors' motion to reject the Leases. Thereafter, Meridian filed two Proofs Of Claim, one against Lechmere for breach of the Leases and one against Montgomery Ward seeking the casualty value of the equipment less the net proceeds from remarketing the returned equipment to others.

On October 21, 1998, the Reorganized Debtors filed a Motion For An Order Disallowing Certain Duplicative Claims seeking to disallow the Lechmere Claim as duplicative of the Montgomery Ward Claim. Meridian objected to this Motion, and the Reorganized Debtors filed a Supplemental Motion seeking not only to disallow the Lechmere claim, but also to reduce the Montgomery Ward Claim. After a hearing, on December 13, 2000, the Bankruptcy Court entered the Order disallowing the Lechmere Claim, but allowing the Montgomery Ward Claim in the amount of $3,500,115.

## II. Factual Background

On October 5, 1995, Meridian and Lechmere entered into a Master Lease for the lease of certain computer equipment. The terms of the Master Lease were then subject to various supplemental agreements which described, among other things, the precise equipment being leased, the rental payments for the equipment, the lease term, and the equipment locations. The Supplements also contained various schedules pertaining to such issues as casualty values, renewal options and purchase options.

The portion of the Master Lease relevant to the instant dispute is Paragraph 10, which pertains to events of default. Pursuant to subparagraph (a) of Paragraph 10, an Event of Default includes the circumstance in which the

> "Lessee becomes insolvent or admits in writing its inability to pay its debts as they mature, or applies for, consents to or acquiesces in the appointment of a trustee or a receiver or similar officer for any of its property, or ... a trustee or receiver or similar officer is appointed for Lessee or for a substantial part of its property and is not discharged within 15 days, *or any bankruptcy, reorganization, debt, dissolution or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is instituted by or against Lessee ...*"

(D.I. 2, Tab 2 at 8, ¶ 10(a)). (emphasis added).

If a default is triggered under Paragraph 10(a), the Lessor's remedies are specified under Paragraph 10(b). In this case, the remedy at issue is set forth in Paragraph 10(b)(2), which gives the Lessor, Meridian, the option to:

> By notice terminate this Lease, whereupon all rights of the Lessee in the Equipment will absolutely cease but Lessee will remain liable as hereinafter provided; and thereupon Lessee, if so

requested, will at its expense promptly return the Equipment to Lessor at the place designated by Lessor.... Lessee will, without further demand, forthwith *pay Lessor an amount equal to any unpaid Rent* due and payable for all periods up to and including the Monthly Rent payment date following the date on which the Lessor has declared this Lease to be in default, *plus, as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Casualty Value of the Equipment then subject to this Lease, computed as of such Monthly Rent payment date.* Following the return of the Equipment to Lessor pursuant to this clause (2), *Lessor will proceed to sell or re-lease the Equipment in such manner as it deems appropriate in its sole discretion.*

D.I. 2, Tab. 2 at 8, ¶ 10(b)(2) (emphasis added).

Supplement 1 to the Master Lease involved a "sale/leaseback" transaction by which Lechmere sold the equipment at issue to Meridian for the sum of $6,070,923. Meridian financed the cost of this equipment and then leased it back to Lechmere for 36 months at a monthly rate of $144,720. for a total rental obligation of $5,209,920. In addition to these terms, the parties also agreed to certain casualty values for the equipment described in Supplement 1. These agreed upon Casualty Values were set forth in Schedule B to Supplement 1 as follows:

| Months Expired After Supplement Commencement Date | Casualty Value |
| --- | --- |
| 0 | $6,981,562 |
| 12 | $5,378,315 |
| 24 | $4,010,672 |
| 36 | $3,067,460 |

With regard to Supplement 2, the transaction contemplated was a "pure" finance lease agreement by which Meridian pur-chased the equipment at issue from an independent vendor for the sum of $130,620, and then leased the equipment to Lechmere for a period of 29 months at a monthly rate of $3,972, for a total rental obligation of $115,188. As with Supplement 1, the parties agreed to Casualty Values for the equipment designated in Supplement 2 and set forth those values in Schedule B to Supplement 2 as follows:

| Months Expired After Supplement Commencement Date | Casualty Value |
| --- | --- |
| 0 | $150,428 |
| 12 | $107,912 |
| 24 | $ 74,974 |
| 29 | $ 63,647 |

With regard to renewal and purchase options, both Supplements referred back to Section 12 of the Master Lease. Under Section 12 of the Master Lease, Lechmere was not obligated to renew or purchase the equipment. (D.I. 2, Tab 2 at 10–11).

Using the time of the Reorganized Debtors' rejection of the Supplements as the applicable time frame, Meridian contends that it is entitled to $3,500,115, the sum of the "casualty values" of the leased equipment under the liquidated damages provisions set forth in the Supplements. The Reorganized Debtors contend that Meridian is only entitled to unpaid rent under the Supplements. Thus, the Reorganized Debtors contends that Meridian is entitled to a sum of $1,447,200 in unpaid rent under Supplement 1 and $39,720 in unpaid rent under Supplement 2 for a total of $1,486,920.

### III. The Bankruptcy Court's Order

At the hearing before the Bankruptcy Court, the parties agreed that the instant dispute involved the application of Illinois law. The Reorganized Debtors argued that the rejection damages sought by Me-

ridian were not a reasonable approximation of the damages that Meridian suffered as a result of the Reorganized Debtors' rejection of the lease. According to the Reorganized Debtors the "casualty value" damages sought by Meridian were an unenforceable penalty that would put Meridian in a better position than they would have been had the leases been fully performed by the Reorganized Debtors. Thus, the Reorganized Debtors argued that the Claim should be limited to approximately 1.4 million dollars, or the amount of unpaid rent due under the Supplements.

In response, Meridian argued that the casualty value calculation included the rent due and owing, as well as an additional approximately 1.3 million worth of money that was Meridian's out-of-pocket investment in the equipment. To this effect, Meridian explained that it added the 1.3 million out of pocket to 4.5 million borrowed from a lender in order to purchase the equipment in question for approximately 6 million. In further support of its position, Meridian offered the affidavit of its Senior Vice President and Chief Financial Officer, Michael Brannan, explaining the leveraged leasing industry and why the amount sought by Meridian was reasonable. As a factual matter, Mr. Brannan's affidavit was not contested by the Reorganized Debtors. (Ex. 7 at 20).

In his affidavit, Mr. Brannan explained that Meridian was an equipment lessor who entered into leveraged lease transactions. (D.I. 2, Tab 5 ("Brannan Aff.") at ¶ 2). In this type of transaction, the lessor purchases equipment from a vendor while financing a portion of the purchase price and then leases that equipment to a lessee. According to Mr. Brannan, the rental stream in leveraged lease transactions is "seldom sufficient" to cover the lessor's original investment in the leased equipment. Mr. Brannan further explained that

there are two types of leveraged leases, operating leases and finance leases. In the case of operating leases, Mr. Brannan contended that typically the present value of the rental stream is never sufficient to cover the lessor's initial investment or to allow the lessor to realize a profit. Thus, according to Mr. Brannan, in these transactions "the lessor assumes that, if the company is viable and a continuing concern, at the end of the lease term, the lessee will either purchase the equipment or renew the lease." (Brannan Aff. at ¶ 7). To this effect, Mr. Brannan explained that:

> [A] retailer is unlikely at the end of the lease to remove millions of dollars of special purpose point-of-purchase equipment at the precise expiration date of the lease. Rather, it is assumed in the leasing industry that the retailer will retain the equipment for its useful life. Doing so, i.e. purchasing the equipment or renewing the lease, allows Meridian [the lessor] to recoup its original investment and realize a reasonable profit. It is this model upon which Meridian's leases—and most commercial equipment leases—are based.

(Brannan Aff. at ¶ 7).

Based on these assumptions, Meridian argued to the Bankruptcy Court that the casualty values are a reasonable estimation at the time the Leases were entered into of the damages to Meridian in the event of a breach of the Leases. Meridian also contended that the casualty values basically consist of two components: the present value of the unpaid rent through the term of the lease and the present value of the equipment necessary for Meridian to recover its investment as well as an amount for Meridian to realize a profit on the transactions. According to Meridian, this latter component is important, because in the event of a breach, Meridian cannot sell the equipment to the lessee or enter into a

renewal. Thus, the latter component of the casualty value is the only way for Meridian to recover its investment and realize its profits in the event of a breach, other than remarketing the equipment to a third party. (Brannan Aff. at ¶ 8).

After considering the parties respective positions, the Bankruptcy Court stated:

I'm going to deny the debtor's motion and find that the liquidated damage provision is reasonable under these circumstances which is essentially, as I understand it, uncontested. I find important to Meridian's position that the fair market value calculation was to be a value-in-place calculation, so you don't have the disruption of removing the equipment and finding a new lessee and/or a new purchaser and the serious dislocation and reduction in value which would result from those types of activities.

Next, I think it's a fair assumption that the retailer would not terminate at the end of the lease period. Given the undisputed fact that there was an anticipated 25 percent useful life at the end of the term, it seems perfectly logical that any retailer would simply continue to use that property for the balance of its useful life, and based upon the fair market value determination, I assume—I don't assume, but I believe it would be reasonable to conclude that, whether the lessee purchased or continued a lease arrangement, that that 25 percent useful life would approximate, and, therefore the payment, either in a purchase price or continued rent, would approximate the investment made by Meridian of 1.398 million plus an anticipated profit. And so, under those circumstances, ·I think that the liquidated damage provision is reasonable under the circumstances.

(D.I. 2; Tab 7 at 25–26). Consistent with its decision at the hearing, the Bankruptcy Court entered an Order allowing the Claim against Montgomery Ward in the amount of $3,500,115.

## DISCUSSION

### I. Jurisdiction and Standard of Review

■ Under 28 U.S.C. § 158(a), this Court has jurisdiction to adjudicate appeals from final judgments, orders and decrees of bankruptcy judges. Pursuant to Federal Rule of Bankruptcy Procedure 8013, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R.Bankr.P. 8013. In reviewing a case on appeal, the bankruptcy court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous. *Id.; see In re Gutpelet,* 137 F.3d 748, 750 (3d Cir.1998). However, a bankruptcy court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Meespierson, Inc. v. Strategic Telecom, Inc.,* 202 B.R. 845, 847 (D.Del.1996). Mixed questions of law and fact are subject to a "mixed standard of review" under which the appellate court accepts finding of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 641–642 (3d Cir.1991) (citing *Universal Minerals Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981)), *cert. denied.,* 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992).

■ In this case, the parties have agreed that Illinois law governs their dispute. Under Illinois law, the question of whether a contractual provision is a penalty clause or a reasonable liquidated dam-

ages clause is a question of law. *See Meridian Leasing Corp. v. Wiener*, 1998 WL 395158 (N.D.Ill. Jul.9, 1998). Accordingly, the Court will review de novo the Bankruptcy Court's conclusion that the instant liquidated damages provision is reasonable.

## II. Whether the Bankruptcy Court Erred In Determining That The Liquidated Damages Claim Sought By Meridian Was Reasonable And Denying The Reorganized Debtors' Motion To Reduce The Amount Of Damages Sought By Meridian

In appealing the Bankruptcy Court's Order denying the Debtor's motion to reduce the damages sought by Meridian and awarding Meridian damages in the amount of $3,500,115, the Reorganized Debtors contend that the damages sought by Meridian are an unenforceable penalty rather than a reasonable liquidated damages sum. In support of their argument, the Reorganized Debtors contend that the instant liquidated damages provision is unreasonable, because it places Meridian in a better position than it would have been in had the Leases in question been fully performed by the Reorganized Debtors. In addition, the Reorganized Debtors contend that the Bankruptcy Court erred by concluding that it was fair for Meridian to assume that Lechmere would not terminate the Supplements at the end of the natural lease terms. The Court will examine each of the Reorganized Debtors' arguments.

### A. *Whether The Bankruptcy Court Erred By Awarding Meridian Liquidated Damages That Placed Meridian In A Better Position Than It Would Have Been In Had The Lease Been Fully Performed*

In appealing the Bankruptcy Court's decision, the Reorganized Debtors contend that the liquidated damages clause in this case is unreasonable, because the damages provided for in that clause put Meridian in a better position than it would have been had the Reorganized Debtors fully performed the lease. By the terms of the Supplements, the Reorganized Debtors contend that Lechmere was only obligated to Meridian for the aggregate monthly rental payments of $5,209,920 for the equipment described in Supplement 1 and $115,188 for the equipment described in Supplement 2 during the natural terms of those Supplements. The Reorganized Debtors contend that nothing in the Supplements requires Lechmere to pay any money toward the initial investment made by Meridian or toward any profits for Meridian. According to the Reorganized Debtors, at the time of the rejection of the Supplements, Lechmere had a remaining rental obligation to Meridian of $1,486,920, but the liquidated damages provision allowed Meridian to collect more than double the amount it would have if the Leases had been fully performed. Had Meridian wanted reimbursement for its initial investment and expected profits, the Reorganized Debtors contend that Meridian should have expressly preserved their rights to such amounts in the Supplements.

In response to the Reorganized Debtors' arguments, Meridian contends that the casualty value in this case is reasonable, because it makes Meridian whole. Meridian contends that it would be "sheer fantasy" to argue that Meridian would be made whole by receiving the unpaid rental stream, without regard to its own investment in the equipment or a reasonable return on that investment. (D.I. 8 at 17). Relying on Section 504 of Article 2A of the U.C.C., Meridian contends that the damages it sought are a reasonable estimate of Meridian's anticipated harm at the time it

entered into the Leases. As for the Debtors' argument that Meridian should have expressly preserved its right to recoup its initial investment and lost profits, Meridian contends that it included such a provision in both Paragraph 10 of the Master Lease and the stipulated Casualty Values in Supplements 1 and 2.

 Under Illinois law, the validity of a liquidated damages clause under is governed by Section 504 of Article 2A of the Uniform Commercial Code as adopted by the State of Illinois. *See* 810 ILCS 5/2A–504. In pertinent part, Section 2A–504 provides:

Damages payable by either party for default … may be liquidated in the lease agreement *but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission.*

810 ILCS 5/2A–504(1) (emphasis added). To determine under Illinois law whether a liquidated damages provision is reasonable or is unenforceable as a penalty, the court must examine whether the provision appears to have been designed to secure a party's performance or whether it was a reasonable estimate of actual damages. *Meridian*, 1998 WL 395158 at * 2. To be an enforceable liquidated damages clause, the damages allowed by the provision must be a reasonable approximation of anticipated or actual damages. *Id., Resolution Trust Corp. v. American National Bank & Trust Co. of Chicago*, 1994 WL 374279 at *4 (N.D.Ill. Jul.12, 1994); *Monroe Bank and Trust v. First Pass Diagnostics, Inc.*, 1992 WL 276969, *6 (N.D.Ill. Oct.2, 1992). Illinois law disfavors penalty clauses, and in close cases, Illinois courts will conclude that the clause is a penalty. *Meridian*, 1998 WL 395158 at *2.

In support of their respective positions, both the Reorganized Debtors and Meridi-

an rely on *Case Credit Corp v. Baldwin Rental Centers, Inc. (In re Baldwin Rental Centers)*, 228 B.R. 504, 508 (Bankr. S.D.Ga.1998). In *Baldwin*, the debtor, Baldwin Rental Centers, Inc., entered into fourteen equipment leases with Case Credit Corporation ("Case"). As part of its usual business practice, the debtor then subleased the equipment to customers at a higher price than it was paying under the leases with Case in order to generate a profit. However, the debtor was unable to stay current with its leases with Case and filed for bankruptcy. Examining a liquidated damages clause which entitled Case to (1) any accrued, unpaid rent at the time of the breach, plus (2) the present value of the rent for the remainder of the lease term, plus (3) the residual value of the equipment, minus (4) the present value of the net proceeds resulting from disposition of the equipment, the court acknowledged that liquidated damages clauses under Article 2, Section 504 of the U.C.C. are "subject to the rule of reasonableness." *Id.* at 508. However, the court also noted that to satisfy the reasonableness requirement, the liquidated damages formula must put the lessor in no better a position than it would have been in had the lease been fully performed. *Id.* 508–509.

Relying on *Baldwin*, Meridian highlights that portion of the case in which the court rejected the debtor's argument that the inclusion of the residual value of the equipment in the liquidated damages provision rendered the provision an unenforceable penalty. Meridian notes that the *Baldwin* court rejected the debtor's argument finding that Case would have had possession of the equipment with an estimated residual value that it could sell to the debtor or a third party at the end of the lease. Thus, Meridian contends that the Baldwin court reasoned that the liquidated damages provision was reasonable, because the lessor,

Case, could have received that sum from the debtor if the debtor performed under the lease. (D.I. 8 at 18).

While the Court understands Meridian's position, the Court also notes that in concluding that the liquidated damages provision in *Baldwin* was reasonable and that the inclusion of the residual value of the equipment was not inappropriate, the *Baldwin* court expressly found that "the formula leaves Case in no better position than it would have been in had the lease been fully performed by Debtor." 228 B.R. at 509. Indeed, in the Court's view, this premise is the touchstone for the *Baldwin* court's analysis. Comparing the dollar amounts that Case would have received if the lease had been fully performed with the amount yielded from the liquidated damages calculation, the *Baldwin* court observed that the amounts were identical. Thus, the *Baldwin* court stated, "*Because the liquidated damages provision leaves Case in no better position than it would be in had the lease been fully performed,* the Court finds that the liquidated damages provision is reasonable." *Id.* at 509 (emphasis added).

In addition to the *Baldwin* court, several other courts have examined the reasonableness of liquidated damages clauses in light of this premise. For example, in *Coastal Leasing Corp. v. T-Bar S Corp.,* 128 N.C.App. 379, 496 S.E.2d 795, 798 (1998), the court examined a liquidated damages clause which allowed the lessor to accelerate the balance of the lease payment while also requiring it to credit the lessee with any sums received from the sale or re-lease of the equipment. Concluding that this clause was enforceable, the court stated that "[t]he liquidated damages clause places plaintiff in the position it would have occupied had the lease been fully performed ..." *Id.; see also Carter v. Tokai Fin. Servs., Inc.,* 231 Ga.App. 755,

500 S.E.2d 638, 641 (1998) (invalidating liquidated damages clause where damages allowed by clause would "put the lessor in a better position following default than he would have been in had the lease been fully performed").

In this case, Lechmere's sole financial obligation under the Leases was $1,486,920 at the time of the Leases' rejection. However, the formula provided in the liquidated damages provision in this case permits a recovery of $3,500,115, more than double the amount that Meridian would have recovered if the Leases had been fully performed by Lechmere. Presumably, under the premise of cases like *Baldwin,* this would have been sufficient to invalidate the liquidated damages clause.

However, Meridian's argument that the liquidated damages clause is not a windfall that places Meridian in a better position than it would have been in had the Leases been fully performed is based on the underlying assumption that Lechmere would have renewed its Leases or exercised its purchase options under the Leases. The basis for Meridian's assumption, and the Bankruptcy Court's acceptance of that assumption, is the affidavit of Michael Brannan. Accordingly, the Court will consider whether the Bankruptcy Court erred in accepting the assumption created by the Brannan affidavit.

B. *Whether The Bankruptcy Court Erred By Concluding That It Was Fair For Meridian To Assume That Lechmere Would Not Terminate The Supplements At The End Of The Natural Lease Terms*

Underlying the Bankruptcy Court's conclusion that the liquidated damages provision in this case was reasonable was what the Bankruptcy Court characterized as a "fair assumption that the retailer [Lechmere] would not terminate at the end of

the lease," but would either purchase the equipment or continue with a lease arrangement for the equipment. (D.I. 2, Tab 7 at 25). On the basis of this assumption, the Bankruptcy Court concluded that "either in a purchase price or continued rent," Lechmere would return the investment made by Meridian plus an anticipated profit, and therefore, the liquidated damages provision was reasonable. (D.I. 2, Tab 7 at 25).

In appealing the Bankruptcy Court's Order, the Reorganized Debtors challenge the Bankruptcy Court's acceptance of the assumption that Lechmere would not have terminated the Leases at the end of their terms. Specifically, the Reorganized Debtors contend that nothing in the factual record or Supplements supports this "finding."

In response, Meridian contends that the Bankruptcy Court's acceptance of this assumption was based on the uncontroverted affidavit of Michael Brannan. Meridian points out that the Reorganized Debtors did not depose Mr. Brannan, did not request an evidentiary hearing, and did not controvert Mr. Brannan's affidavit with other evidence.

In reply, the Reorganized Debtors contend that Mr. Brannan's affidavit is entitled to no weight because the question of whether a liquidated damages clause is reasonable is a question of law. In addition, the Reorganized Debtors contend that while they did not contest the "facts" offered by Mr. Brannan such as "the *fact* that Meridian is an equipment lessor, the *fact* that Mr. Brannan is Meridian's Senior Vice President and Chief Financial Officer, and the *fact* that Meridian purchased the equipment that Lechmere leased in Supplement No. 1 for $6,070,923.57 and the equipment in Supplement No. 2 for $130,620.20," they did contest Mr. Brannan's "opinion" that the liquidated dam-

ages clause was reasonable. (D.I. 9 at 3–4) (emphasis in original). Further, the Reorganized Debtors contend that Mr. Brannan was precluded from testifying about the leasing practices of the leveraged leasing industry, because Meridian did not lay the proper foundation under Federal Rule of Evidence 701 to admit the lay opinions of Mr. Brannan. Further, even if Mr. Brannan possessed sufficient personal knowledge to offer a lay opinion under Rule 701, the Reorganized Debtors contend that the opinion should have been afforded no weight in light of Mr. Brannan's obvious bias as a Meridian employee, a point emphasized by the Reorganized Debtors at the hearing before the Bankruptcy Court. (D.I. 2, Tab 7 at 20–21).

With regard to the Reorganized Debtors' Rule 701 argument, the Court notes that the argument was raised for the first time in the Reorganized Debtors' Reply Brief. As such, Meridian did not have the opportunity to respond to this argument. Further, and in any event, while the Reorganized Debtors stated their disagreement with Mr. Brannan's opinions, they did not object to the admission of his opinions under Rule 701 at the hearing, and therefore, the Reorganized Debtors waived any objections as to the admission of Mr. Brannan's testimony. *See e.g. Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 184 (3d Cir.1993) (holding that objections not timely raised are waived); *Pelican Bait, Inc. v. CNA Insurance Co.*, 2000 WL 1056542, *3 n. 6 (E.D.Pa. Aug. 1, 2000). Accordingly, the Court declines to base its decision on Rule 701 grounds.

The Court does, however, agree with the Reorganized Debtors' argument that the Bankruptcy Court erred by concluding that it was fair for Meridian to assume that Lechmere would not terminate the supplements at the end of the natural lease terms. Although Meridian explained

through the Brannan affidavit, that in the context of the leasing industry and Meridian's experience the retailer/lessee seldom terminates the arrangement at the end of the lease period, in the Court's view, applying this principle to Lechmere was speculation. Nothing in the Supplements required Lechmere to purchase the equipment or renew the Leases at the end of their terms. Indeed, Meridian acknowledged that while this was not their usual experience, it was possible:

> The Court: Tell me why is it not? Why is the assumption that the retailer will not terminate the arrangement a solid assumption? *Why can't the retailer find perhaps better equipment and lease it or purchase it and yank your stuff out and give it back to you?*
> Mr. Teplinsky: *I think certainly the retailer can do that.* In our experience—and I think that we attempt to set that forth in an affidavit that we filed along with it. In our experience, that doesn't happen.

(D.I. 2, Tab 7 at 19) (emphasis added). And, as the Reorganized Debtors suggest, it was even more likely in this case, that even if the Lechmere stores stayed open until the end of the lease terms, the Reorganized Debtors word have returned some, if not all, of the equipment to Meridian:

> As you Honor knows this equipment was being used in Lechmere stores. So certainly there was no assurance in any way, shape, or form that these stores would have stayed open. Indeed, given the filing of Chapter 11, even if the debtors attempted to keep those stores open, it's likely this equipment might have [been] returned at the end of the term of the lease with no further obligations by the debtors.

(D.I. 2, Tab 7 at 6).

In addition to the fact that neither the Master Lease nor the Supplements re-

quired Lechmere to renew the Leases or purchase the equipment, the Court also observes that neither the Master Lease nor the Supplements required Lechmere to reimburse Meridian for its initial investment or any anticipated profits during the term of the Leases. Indeed, had Meridian wanted to, they could have required Lechmere to pay these sums during the terms of the Leases.

For example, in *PacifiCorp Capital, Inc. v. Tano, Inc.*, 877 F.Supp. 180, 184 (S.D.N.Y.1995), a case relied upon by Meridian, the court upheld a liquidated damages provision that allowed a lessor to recover an amount exceeding future rental payments due under the lease, because the lessor structured the lease so that it would recover its investment and some profit during the initial term of the lease, regardless of whether the lessee renewed or terminated the lease at the end of its natural term. Unlike the instant case, in *PacifiCorp*, the rental payments due under the term of the lease equaled a sum that covered Pacificorp's initial investment for the equipment, as well as a profit, such that Pacificorp would have recovered its initial investment plus a profit by the end of the lease term. *Id.* at 182. Because Meridian was free to structure the lease so as to permit its recovery of its initial investment and profit during the term of the lease, but chose not to, it is the Court's view, that Meridian accepted the business risk that it might never recover its initial investments or any profits.

In sum, the Court concludes that in light of the express terms of the Supplements and the fact that Meridian could have structured its Leases so as to allow the recovery of its initial investment and profits during the term of the lease or to require Lechmere to renew or purchase the equipment at the end of the terms, the Bankruptcy Court erred in assuming that

Lechmere would not have terminated the Supplements at the end of their natural terms. Further, given the express terms of the Supplements which did not obligate Lechmere to renew or purchase the equipment at the end of the lease, the Court finds the Brannan affidavit to be speculative on this point, and therefore, the Court concludes that the Bankruptcy Court erred in giving the Brannan affidavit dispositive weight in its determination of the purely legal question of whether the liquidated damages clause was reasonable.

### C. *Summary*

Because the Court concludes that the Bankruptcy Court erred in concluding that it was fair for Meridian to assume that Lechmere would not terminate the Supplements at the end of the natural Lease terms, the Court likewise concludes that the Bankruptcy Court erred in concluding that the liquidated damages clause was reasonable. Lechmere was not obligated under the terms of the Supplements or Master Leases to purchase the equipment or renew their Leases. Indeed, had Lechmere waited to close until the Supplements had run their natural course, Lechmere could have returned the equipment to Meridian and Meridian would have had no recourse against Lechmere regardless of its anticipated hopes for the recoupment of its investment or a profit. Because the liquidated damages clause puts Meridian in a better position than it would have been in had the Leases been fully performed, the Court concludes that the liquidated damages provision is an unenforceable penalty, and the Bankruptcy Court erred in concluding otherwise. Accordingly, the Court will reverse the Bankruptcy Court's December 13, 2000 Order and reduce the Claim to reflect damages in the amount of $1,486,920.

## CONCLUSION

For the reasons discussed, the Bankruptcy Court's December 13, 2000 Order denying the Reorganized Debtors' request to reduce the amount of the rejection damages claim filed by Meridian against Montgomery Ward and allowing the claim in the amount of $3,500,115 will be reversed, and Meridian's Claim will be reduced to reflect damages in the amount of $1,486,920.